FITZPATRICK BUILDING COMPANY v. JOHN A. HEALY.[1]

January 10, 1913.

Nos. 17,784—(127).

Construction of contract.

Where F., doing business as a building company, contracted with the defendant to furnish certain material and labor for a building, the price thereof to be applied upon a debt due from F. to a firm of which the defendant was a member, and subsequently the building company was incorporated, and the corporation actually furnished such material and labor, but the defendant had no notice or knowledge of such facts, the defendant could not be held liable to the corporation, either for the material and labor so furnished, or for material and labor furnished pursuant to a similar contract executed subsequently to the plaintiff's incorporation, but likewise without notice to or knowledge by the defendant that he was not still dealing with F., or for extras furnished by the plaintiff under the same circumstances.

Question for jury.

The question of the making of the agreement between the defendant and

1 Reported in 139 N. W. 495.

F., and the question as to whether the defendant had notice or knowledge of the matters subsequently occurring, or of the fact that the material and labor was actually furnished by the plaintiff, *held*, under the evidence, for the jury.

Action in the district court for Ramsey county to recover a balance of $488.20 alleged to be due upon certain contracts. The answer denied defendant made any agreement with plaintiff and alleged an agreement with Mark Fitzpatrick and the Fitzpatrick Building Company for the remodelling of a building for the sum of $1,068, with an express agreement that no payment in cash was to be made by defendant, but that the indebtedness of Mark Fitzpatrick to the Healy Plumbing & Heating Company should be reduced to the extent of that price and of the value of all extra work and material furnished; that Mark Fitzpatrick and the building company failed to complete the work and defendant was compelled to pay for labor and satisfy liens to the extent of $802.03. The reply set out the facts concerning the execution of the trust agreement mentioned in the opinion, specifically denied that the Fitzpatrick Building Company was indebted to defendant or to the Healy Plumbing & Heating Company, and that Mark Fitzpatrick or the building company ever agreed that the indebtedness of Thomas Fitzpatrick & Son or Mark Fitzpatrick should be reduced in any amount whatever. The case was tried before Hallam, J., and a jury which returned a verdict in favor of defendant. From an order denying a new trial, plaintiff appealed. Affirmed.

*Goddard & Cahill*, for appellant.

*Kennedy & Kennedy*, for respondent.

PHILIP E. BROWN, J.

Prior to December 30, 1907, Thomas Fitzpatrick and his son Mark were copartners engaged in contracting and building under the name of Fitzpatrick & Son. On that date Thomas died. The firm was then indebted in the sum of more than $6,000 to the Healy Plumbing & Heating Company, a copartnership of which the defendant was a member, for the whole amount of which Mark was liable. Mark continued the business of the firm at the same place

under the name of Fitzpatrick Building Company. In February, 1908, Mark became embarrassed financially. His creditors were called together, and it was determined that he should turn over his properties to a trustee, to be disposed of for .the purpose of liquidating his debts. This agreement was executed on March 12, 1908. The contract is not set out in the record, but it appears that the substance of two of its provisions was as follows: The creditors extended the time of payment of their claims for two years from the date of the agreement, and agreed to look to Mark alone for any balance remaining unpaid thereon after the trust property had been exhausted, and to receive and apply sums paid by Mark on their several claims. The evidence also established that the firm of which the defendant was a member was a party to this agreement. Thereafter the business of the building concern was continued at the old stand. Mark's cousin, William McGuigan, had been employed by Fitzpatrick & Son for many years, and continued in Mark's employment after the death of Thomas.

A building partially constructed, and which was a part of Mark's assets, went into control of the trustee. It was arranged between the parties to the trust agreement, however, that the defendant's firm should take this building for a portion of its claim, and should complete the same. Thereafter, and on August 21, 1908, the Fitzpatrick Building Company and the defendant entered into a written contract, in which the former agreed to perform certain specified labor and furnish certain materials in finishing the building, for the sum of $750. This contract was signed "Fitzpatrick Building Co., per M. J. Fitzpatrick."

On August 26, 1908, Mark, McGuigan, and Elva A. MacLeod, a stenographer who had been employed in the office of the building company, executed articles of incorporation of the business in question, under the name of ."Fitzpatrick Building Company," and such articles were duly recorded on the same day; Mark being made a director and the president of the corporation.

On September 23, 1908, the Fitzpatrick Building Company and the defendant entered into a written contract of like tenor and effect to the one theretofore entered into by the defendant for the furnish-

ing of labor and material for the building, signed by the building company, in the same manner as the former contract; the consideration being $318. Neither of the contracts contained any provision as to when the work was to be completed, nor when or to whom the consideration was to be paid. The labor and materials called for by these two contracts were supplied, and extra labor and materials were also furnished in the sum of $222.23. It is conceded that the defendant is entitled to a credit on the several sums stated in the sum of $802.03, all except $250 thereof having been advanced by the defendant to avoid mechanics' liens. The plaintiff in this action seeks to recover the balance, namely, $488.20.

The action was tried to a jury, who returned a verdict for the defendant. Thereafter, on April 13, 1912, judgment was rendered for the defendant. On May 4, 1912, the plaintiff moved for a new trial on a settled case, which motion was denied. The plaintiff appealed from a judgment and order; its assignments of error being to the effect that the court should have directed a verdict for the plaintiff, and that error was committed in the admission and rejection of evidence, the first of which raises the ultimate question as to whether there was sufficient evidence to warrant the jury in returning a verdict for the defendant.

1. It will be noticed that the contract of date August 21, 1908, was made prior to the plaintiff's incorporation. No assignment of this contract appears to have been made to the plaintiff. The plaintiff claims, however, that in fact it performed this contract, and that the defendant had notice and knowledge thereof at the time of such performance; and as a preliminary to this claim it asserts, and introduced evidence tending to show, that shortly after the arrangement concerning the trust agreement Mark quit the business, turning the same over to McGuigan, who conducted it under the old name and at the same place as theretofore, until the organization of the corporation, and that, while Mark continued to work at the same place, he was merely an employee of McGuigan until the incorporation. Neither of them, however, gave any notice of the change. It appears that the plaintiff did perform the contract of date September 23, 1908, and furnished the extras, and the plaintiff insists that the

defendant was advised of McGuigan's acquisition of the business before the making of the first contract. On the defendant's part it is claimed, and evidence was introduced tending to show, that there were dealings between the defendant's firm and Fitzpatrick & Son, and also with Mark while he, as conceded, was conducting the business after his father's death under the name of Fitzpatrick Building Company; that at the time the defendant was considering the taking over of the building from the trustee he took the matter up with Mark, prior to the making of the contract of August 21, 1908, and they agreed that whatever work he did on the building should apply on his obligation to the defendant's firm; that the plaintiff's claim that the business of the Fitzpatrick Building Company was transferred from Mark to McGuigan was a subterfuge; and that in any event he had no notice or knowledge thereof, or of the subsequent incorporation of the plaintiff.

It is certain from what has been said that the first contract, which forms in part the basis upon which this action is founded, was at the time of its execution either the property of Mark Fitzpatrick, as the successor of Fitzpatrick & Son, and doing business as Fitzpatrick Building Company, or of McGuigan, doing business under the same name. In order, therefore, for the plaintiff to recover anything on this contract, no assignment to the plaintiff having been shown, it was necessary for it to prove its performance thereof, and also that the defendant had notice or knowledge of the plaintiff's acts in such regard either before or during such performance; and the court so charged without objection. That there was evidence reasonably sufficient to support the verdict of the jury in this regard in the defendant's favor is too clear for discussion. The defendant positively denied both notice and knowledge, and the testimony introduced on the plaintiff's behalf to establish either was, we think, very unsatisfactory. This conclusion disposes of the $750 claim adversely to the plaintiff.

Passing, now, to the consideration of the plaintiff's other claims, it should be remembered that the second contract was executed subsequently to the plaintiff's incorporation, and while it does not appear in the record when the materials and services under the im-

120 M.—16.

plied contract for extras were furnished, we will assume that such were supplied after plaintiff's incorporation. The defendant's whole defense to these claims rests primarily upon the proposition that it was agreed between him and Mark, while the latter in fact constituted the Fitzpatrick Building Company, whatever labor and materials should be furnished by him would be applied upon his obligation to the defendant's firm. Of course, Mark had the right to do business under any name he saw fit to adopt, and if he made such contract it was a valid one; the plaintiff's suggestions that this contract, if made, would be unenforceable under the statute of frauds, being untenable, because such agreement would constitute a contract in liquidation of Mark's own debt, and not that of another.

We think it is clear that both the question as to the making of this agreement and of Mark's relation to the business at the time it is claimed it was made were for the jury. The plaintiff, however, strenuously contends otherwise; so we will say that we have examined the evidence with care in this regard. The alleged transaction of the surrendering of the business by Mark to his relative, McGuigan, under which their relation as employer and employee was reversed; the continuation of the business at the old stand and under the old name; the incorporation by the same parties, with the addition only of an employee; the testimony of the defendant concerning the declarations made by Mark and McGuigan, contrary to their claims on the trial—all of these circumstances taken together made, we think, a strong showing for the defendant to the effect that it is probable the contract was made, and renders an interference with the finding of the jury in such regard improper.

This conclusion does not, however, dispose of the question of the defendant's liability in the premises; for we consider that the labor and materials, both under the contract of date September 23, 1908 (which we have also referred to as the second contract), and the implied contract, were furnished after the plaintiff's incorporation, and by the corporation. The question now being, Is the defendant liable because of such fact? We eliminate the further question of whether the second contract was in fact made with the corporation, for we deem this to be a pure question of fact.

Ordinarily, where a person performs labor for another with the knowledge of the latter and without his objection, the law implies a promise to pay therefor; but this rule is not of universal application, and where it appears that one, without negligence on his part, has been induced by another's conduct to enter into apparent contractual relations with or to receive the benefit of the services of such other person, when he has the right to believe that he is dealing with a third person, and it further appears that to hold him liable to any one except the person with whom he believed he was dealing will result in loss to him, he will not be held so liable. To hold otherwise would be to establish a contract which at least one of the parties never intended to make, and likewise to force a contract upon a party which he did not voluntarily enter into, to his damage and against his protest, and this without the existence of all the elements of a purely implied contract. The principles underlying this proposition are elementary. See Boston v. Potter, 123 Mass. 28, 25 Am. Rep. 9, and the many cases following the rule there announced. See, also, the cases upon the necessity of giving notice of changes in copartnerships, and those applying the rule that, where one of two innocent parties must suffer by reason of the act of a third party, he must bear the loss whose conduct, though innocent, has created the condition out of which the injury arises.

It would be a fraud upon the defendant's rights, if his contentions of fact be well founded, which was for the jury to determine, to hold him liable to this plaintiff; and we have reached this conclusion without reference to the question as to whether notice to Mark would constitute notice to the plaintiff of the prior agreement between him and the defendant as to the application of payments to be made under the contracts on Mark's debt to the defendant's firm.

2. The assignments of error to the rulings of the trial court upon the admissibility of evidence have been examined, and we find no reversible error therein, nor any questions raised thereby requiring discussion.

Judgment and order affirmed.

Heard before HALLAM, J., took his seat.