WILLIAM R. MARSHALL vs. EDWARD R. GILMAN.

August 24, 1891.

Vendor and Purchaser—Fraud—Rescission—Waiver of Right.—The plaintiff, a resident of the city of St. Paul, was induced to purchase certain improved real property in the city of New York, of defendant, in reliance upon certain written representations made by him respecting its value, character, and situation, and which representations in several important particulars the plaintiff soon after found to be untrue, so that he was entitled to a rescission of the sale, if seasonably demanded. He, however, delayed for six months thereafter to demand a rescission of the sale, dealing with it as his own, and endeavoring to dispose thereof. *Held*, that he must be deemed to have waived his right to rescind, and to have made his election to keep the property.

Same—Damages not Recoverable in Action to Rescind.—The action for a rescission is entirely distinct from an action at law to recover damages for fraudulent representations or a breach of warranty, and, after a trial on the merits, alternative relief by way of damages cannot be recovered in the former action, upon the refusal by the court to grant the equitable relief sought.

Appeal by plaintiff from an order of the district court for Ramsey county, *Kerr*, J., presiding, refusing a new trial after judgment ordered for defendant in an action to rescind an exchange of real estate, and for a reconveyance, etc.

*John M. Gilman* and *Robertson Howard*, for appellant.

*Lusk, Bunn & Hadley*, for respondent.

VANDERBURGH, J.   1. The findings of fact by the trial court are, we think, sustained by the evidence, and warrant the judgment. This action is for a rescission of a contract for an exchange of certain real property owned by plaintiff, in the city of St. Paul, for certain lots in the city of New York, which contract has been mutually executed by the delivery of deeds in pursuance thereof.   The court finds "that said defendant, being very anxious and desirous to dispose of said property in New York City, owned as aforesaid by him, either by sale or in exchange for other property, on or about the 15th day of February, 1889, employed, authorized, and directed

Canby & Cathcart, a firm of real-estate agents residing and doing business in the said city of St. Paul, to negotiate for him a sale, or exchange for other property, of his said New York property, and wrote and delivered to them a letter, to be shown by them to persons to whom they might offer, for sale or exchange, said New York property, in which letter he professed and pretended to give a true and correct statement as to the value and character of said New York property; that said defendant also delivered to his said agents, Canby & Cathcart, two certain photographs, which he professed and pretended were a true and correct representation of said property, and its location and surroundings, to be by them shown to persons to whom they might offer said New York property for sale or exchange; that said Canby & Cathcart, as the agents of said defendant, on or about the 15th day of February, 1889, informed said plaintiff that they had said New York property for sale or exchange, and delivered to him as agents of said defendant the letter aforesaid, and exhibited to him as agents of said defendant the photographs aforesaid; that said plaintiff was a resident of the said city of St. Paul, and had no personal knowledge or means of knowledge as to the character, condition, or value of said real estate in the city of New York, and relied entirely upon the statements and representations by said defendant and his said agents, made in and by said letter and photographs, in relation to said New York property; that on or about the 21st day of February, 1889, the plaintiff, relying upon said letter and photographs, was induced to convey, by two warranty deeds by him executed, his property in the city of St. Paul to defendant, in consideration and exchange for a conveyance in fee-simple, by two warranty deeds by said defendant, delivered on the same day, to plaintiff of the above-described New York City property owned by him." The court also finds that certain material statements and representations contained in the letter referred to were not true as therein set forth, particularly as respects the market value of the property, the cost of the houses, the character of the neighborhood as a residence district; and also that the houses were not first-class houses in every respect, as represented, but, on the contrary, were inferior in workmanship and material, and were

considerably out of repair at the time said letter was written. The plaintiff then knew nothing of the untruth of any of the representations of the defendant, except that the deed, received by him on the day above mentioned, disclosed that one lot was only 19 feet frontage, instead of 20 feet, as represented to him.

But the court also finds that, "immediately after the consummation of said exchange of properties, and on the last of February or first of March, 1889, the plaintiff went to New York, and personally examined said property, and became acquainted with its location, situation, character, condition, and surroundings, and investigated as to its value. While so in New York, and on the 7th day of March, 1889, the plaintiff, after due notice and advertisement thereof, caused said property to be offered for sale at public auction at the place where real property was usually sold in that manner in said New York City, and, although there was a good attendance at said auction, plaintiff was unable to obtain a bid for said property in excess of the said mortgages upon the same; and thereupon, after further unsuccessful efforts to dispose of said property, the plaintiff, in said month of March, returned to St. Paul. After said return plaintiff did not see said property in New York again, and, so far as the evidence shows, learned nothing more with respect to it, or the truth or falsity of said representations of defendant concerning it, unless it may be as to the price for which it could be disposed of. That plaintiff, after his said return, placed said New York property in the hands of his agents in St. Paul for sale, as his property, gave a party several options upon it at a fixed price, entered into negotiations with the defendant for its repurchase by him, and was offered as high as $5,500 for it in excess of the said mortgages upon it, which proposition he declined, and then, after same was withdrawn, offered to accept it if renewed. In June, 1889, plaintiff paid $775 interest due on the mortgages upon said New York property, and in July and August paid $29.20 premiums for insurance thereon; and so from the time of his said return to St. Paul, in March, down to the time of his attempted rescission of said exchange in October, the plaintiff continued treating said New York property as his own, and endeavoring to dispose of it. I find the fact to be, as tes-

tified by plaintiff, that he knew of facts which entitled him to rescind, and so stated to his agents, Canby & Cathcart, as early as April or May, 1889, but preferred to take his chances of realizing something by a sale of the property, rather than to undergo the annoyance and possible legal complications of a rescission. On the 23d of October, 1889, the plaintiff notified defendant of his election to rescind, which was the first intimation the defendant had of such desire or intention on the part of the plaintiff, or of any claim by plaintiff that the facts had been misrepresented by defendant. In the interval the defendant had disposed of one of the tracts in St. Paul conveyed to him in exchange by plaintiff, the amount realized for the same not clearly appearing in evidence. And in the mean time, also, the construction of a row of tenement houses had been commenced immediately across the street from the New York property, which materially detracted from its value in the market."

It is contended that the findings of fact are not supported by the evidence, as respects the time of the discovery by plaintiff of the falsity of the alleged representations of defendant in respect to the value and condition of the property, and his election to retain the same. As before stated, we think the findings warranted by the evidence.

The terms of the letter, which contains all the representations upon the faith of which plaintiff acted, and the character and condition of the property, were such as contemplated and required reasonable diligence on plaintiff's part in making his investigation and deciding what he would do. In the letter referred to the defendant states that he had purchased the property of one Frost of St. Paul; that it was, when purchased, represented to be worth the sum stated; and, after describing the property, he states that "a personal visit to New York City last month resulted in my finding the representations made to be correct." He also states the information and advice received from others in respect to the property and its value, and the sale of an adjoining tenement. He also adds: "I do not believe that these houses could have been built for less than $16,000 apiece, and certainly real estate in that portion of New York cannot be worth less than $500 a front foot." The court finds that "it is true

that the defendant had been informed by other parties as stated in the letter," and that there was no intention on his part to deceive or defraud the plaintiff. Apart from the expression of his own judgment and opinion, the letter clearly shows that the basis of the representations (which he was ready to substantiate) was his examination and investigation on a visit to New York, and the information derived from others, including the expression of their judgment. The letter also contains a warranty and stipulation to rescind, as follows: "In case you make a trade or sale, I personally guaranty the property is as herein represented, and if, upon investigation, it is found not to be as herein represented, I personally agree to cancel the trade, and to pay the purchaser all expense to which he has been subjected." The property is also stated to be heavily mortgaged, and the houses unoccupied. Under the terms of the letter, it would clearly be the duty of the purchaser to exercise reasonable diligence in investigating the truth of the representations, and to decide promptly thereafter the question of rescission. The plaintiff accordingly proceeded to New York soon after the sale, made personal examination of the houses and surroundings, made inquiry of real-estate men in respect to its value, and, after extensive advertising, offered it for sale at auction at the Real-Estate Exchange on the 7th day of March next after the sale. Knowing that the defendant's means of knowledge must have been a similiar inspection of the property, and information derived from others, and that the letter stipulated for a rescission only "*upon investigation,*" the plaintiff was certainly called upon to make such investigation as would satisfy himself as to the condition and value of the property, and that he made such investigation is fairly inferable from the evidence. Immediately upon his arrival in New York, about March 1st, plaintiff went to see the property, went into the houses and examined them, he says, as thoroughly as he needed to do, and looked over the neighborhood, and stayed till the auction; made inquiries in the interval touching the value of the property, and at the day of sale authorized the auctioneer to sell one lot for $18,500, and the other for $19,500, to include the amount due on the mortgages. The estimated value of each lot, as stated in the letter, was *$27,500* and

$22,500 on a forced cash sale. The plaintiff received no *bona fide* bid for the property at the exchange, though it was fairly offered as advertised, and there was a good attendance of bidders. In fact, it would not bring in the New York market anything above the mortgages, as we think must have been clearly apparent. He was then informed, upon investigations, that the statements in defendant's letter in respect to values were incorrect. The photographs were correct representations of the property, and his personal examination had also informed him whether the houses and neighborhood were as represented. The question whether the property could *ultimately* be traded or sold at an advance on the mortgages involved elements of uncertainty; and it was for him to determine whether he would take the "chances" of retaining and selling it, or rescind the sale; and we think he was called upon to make his election, which the court finds he did, as early as April or May. We do not think the record shows that he subsequently discovered any new fact entitling him to rescind. The failure to make a satisfactory sale subsequently, in view of what he had already ascertained, could not be so considered.

2. There is but one cause of action stated in the complaint, and that is an equitable one. It was not a case for equitable relief, with damages, nor a case presenting both an equitable and legal cause of action, so that, upon final submission, the party defendant might be deemed to have waived a jury trial. The actions for rescission, and for damages for fraud or breach of warranty, are entirely distinct. The latter, as an independent remedy at law, was not before the court, and was not and could not be tried under these pleadings, and the defendant has not, of course, waived his right to a jury therein. The court was right in refusing to assess plaintiff's damages.

Order affirmed.