## ARTHUR L. PARSONS *vs.* WILLIAM McKINLEY.

Submitted on briefs Jan. 4, 1894. Reversed Feb. 9, 1894.

No. 8509.

**Promptness in rescinding contract for fraud.**

It is the duty of a party who has been induced to enter into a contract through fraud to act upon the first opportunity after discovering such fraud, and to rescind the contract by repudiating its obligations and restoring what has been received under it, if he desires to avail himself of his right to rescind. He is bound to elect what course he will pursue within a reasonable time, at least, after learning of the deception, and is not at liberty to hesitate and delay or wait for a future view of his own convenience, or of the market value of the property, before determining the question of affirmance or rescission.

**The facts stated.**

Plaintiff purchased stock shares in an iron-mining company from defendant in February, 1892, paying part of the agreed price in cash, and

giving his notes for the balance. In July of that year, after having renewed his notes, and paid interest thereon, he discovered that certain false and fraudulent representations had been made to him by defendant's agent concerning the extent of the operations of said company, to induce, and which did induce, him to make said purchase. During the period of six months following such discovery, and up to the day before this action was brought, he frequently stated to defendant that for want of money he could not pay said notes, and requested defendant to carry them along; and at no time did he claim that he had been imposed upon by false and fraudulent statements or misrepresentations, nor did he in any manner repudiate the contract, or claim that it should be annulled on the ground of fraud. *Held*, that plaintiff could not maintain an action to compel the surrender and cancellation of his notes and to recover the money paid to defendant on the contract.

Appeal by defendant, William McKinley, from an order of the District Court of St. Louis County, *Charles L. Lewis*, J., made August 8, 1893, denying his motion for a new trial.

On February 24, 1892, the plaintiff, Arthur L. Parsons purchased of defendant at Duluth two hundred shares of stock in the Charleston Iron Company, a mining corporation organized under the laws of this state and owning mining land on the Mesaba range in St. Louis County. He paid $400 and agreed to pay $2,200 more for the stock and it was left with defendant as security for the payment of plaintiff's notes for the unpaid portion of the purchase price. The notes fell due in April, 1892. He paid the accrued interest and renewed the notes for sixty days. He again paid the interest and renewed the notes in June, 1892.

On the sale, defendant's agent without knowing the facts stated as of his own knowledge that shafts and pits on the property had been sunk in iron ore to the depth of seven feet. Plaintiff was ignorant in the matter and believed the statement and relied thereon. In fact, no shaft or pit had been sunk and the agent had no personal knowledge on the subject. The mining property was over sixty miles north from Duluth where the parties resided and where the stock was sold. The market value of the stock declined and at the time of the commencement of this action did not exceed $2 per share.

Plaintiff discovered the falsity of the statement in July, 1892. He afterwards had several interviews with defendant concerning

v.56m.—30

renewals and payment of his notes and asked further time, but did not mention or refer to the false statement or repudiate the purchase. He first mentioned it to defendant on January 19, 1892, and immediately thereafter commenced this action to have his notes cancelled and to recover the money he had paid. The trial court made findings of these facts and ordered judgment for plaintiff as prayed. Defendant moved for a new trial but was refused and he appeals.

*Walter Ayers*, for appellant.

It is the duty of a party who has been induced to enter into a contract through fraud, if he desires to avail himself of that objection, to act upon the first opportunity after the discovery of the fraud and·rescind the contract by repudiating its obligations and restoring whatever has been received under it. If he delays acting and retains property delivered under the contract beyond a reasonable time after such discovery, he is held to have ratified the contract. *Cobb* v. *Hatfield*, 46 N. Y. 533; *Welles* v. *Yates*, 44 N. Y. 525; *Baird* v. *Mayor, &c., of N. Y.*, 96 N. Y. 567; *Lindsley* v. *Ferguson*, 49 N. Y. 623; *Masson* v. *Bovet*, 1 Denio, 69; *Hammond* v. *Pennock*, 61 N. Y. 145; *Gould* v. *Cayuga Co. Nat. Bank*, 86 N. Y. 75; *Schiffer* v. *Dietz*, 83 N. Y. 300; *Hunt* v. *Blanton*, 89 Ind. 38; *Key* v. *Jennings*, 66 Mo. 356; *Marshall* v. *Gilman*, 47 Minn. 131.

*Cotton, Dibell & Reynolds*, for respondent.

One desiring to rescind a contract upon the ground of fraud must move with reasonable promptness after discovery. He must not, by any positive act thereafter, ratify the transaction and he must not be guilty of such unreasonable delay that a court of equity will refuse him relief. In the case at bar it cannot be contended that plaintiff by any positive act ratified the fraudulent sale. Neither was there any delay or acquiescence in the fraudulent transaction within the rule. The wrongdoer cannot make extreme vigilance and promptitude conditions of rescission. *Pence* v. *Langdon*, 99 U. S. 578; *Marston* v. *Simpson*, 54 Cal. 189; *Wicks* v. *Smith*, 21 Kans. 412; *Nealon* v. *Henry*, 131 Mass. 153; *Gilpin* v. *Smith*, 19

Miss. 100; *Veazie* v. *Williams*, 8 How. 134; *Allore* v. *Jewell*, 94 U. S. 506; *Williamson* v. *New Jersey S. R. Co.*, 29 N. J. Eq. 311.

COLLINS, J.   There is but one feature of this case which we need to consider, and that is presented by appellant's fifth assignment of error,—that the conclusion of law ordering judgment in plaintiff's favor was not justified by the findings of fact.   When purchasing stock shares of the Charleston Iron Company from defendant, in February, 1892, plaintiff paid a part of the agreed price, and executed and delivered his promissory notes for the balance. These notes were renewed and interest was paid several times, the last renewal being in June, 1892.

This action was commenced in January, 1893, to compel a surrender and cancellation of the notes, and to recover the various sums of money paid by plaintiff, on the ground, as alleged in the complaint, that false and fraudulent statements and representations as to the depth in iron ore to which the mining company had sunk its shafts and pits were made by defendant and his agent to plaintiff with intent to deceive and defraud the latter, and to induce him to purchase the stock shares in question.

These allegations were found to be true, and the court also found that plaintiff relied upon and believed them when buying the stock.   It then proceeded to find that plaintiff discovered the false and fraudulent character of these statements and representations in the month of July, 1892, and that afterwards, and prior to January, 1893, he had several interviews and communications with defendant concerning the payment of his notes, executed and delivered in renewal in June previous, then past due; that in none of said interviews and communications did plaintiff call defendant's attention to the fact that false and fraudulent statements and representations had been made to him, nor did he in any way repudiate the transaction or claim that it should be annulled on that ground.   On the contrary, the plaintiff at these interviews and in these communications, some of which occurred in the first half of the month of January, 1893, informed defendant that he did not have the money with which to pay the notes, and that the latter would have to carry them along for some time.   He first made the

claim now put forward on or about January 19, 1893. It will thus be seen that a period of more than six months elapsed after plaintiff learned. that he had been deceived and defrauded before he mentioned it to defendant, or manifested an intention to repudiate his obligations.

During this period of time he had frequent interviews and communications with defendant respecting the payment of his paper, but at no time did he intimate that he had been deceived and defrauded, or that he intended to refuse payment. His default was always excused on the ground that he was not in funds, and he frequently requested defendant to hold the notes for payment in the future. He did not, after knowledge of the alleged fraud and deception, renew the notes, nor did he in express words affirm the transaction, but he said and did things wholly inconsistent with a purpose or intention of refusing to abide by it. He must be deemed to have waived his right to rescind upon the ground of fraud, and to have elected to retain and pay for the stock shares.

While the facts are different in the two cases, no real distinction can be pointed out between plaintiff's acts and conduct after he discovered the fraud and those of appellant in *Marshall* v. *Gilman,* 47 Minn. 131, (49 N. W. 688.) Any act of ratification of a contract after knowledge of the facts authorizing a rescission amounts to an affirmance, and terminates the right to rescind. *Kraus* v. *Thompson,* 30 Minn. 64, (14 N. W. 266.) See, also, *Crooks* v. *Nippolt,* 44 Minn. 239, (46 N. W. 349.) Mere passiveness, even for an unreasonable length of time, will terminate the right.

It is the duty of a party who has been induced to enter into a contract through fraud to act upon the first opportunity after discovering such fraud, and to rescind the contract by repudiating its obligations and restoring what has been received under it, if he desires to avail himself of his right to rescind. He is bound to elect what course he will pursue within a reasonable time, at least, after learning of the deception, and is not at liberty to hesitate and delay or wait for a future view of his own convenience, or of the market value of the property, before determining the question of affirmance or rescission. *Masson* v. *Bovet,* 1 Denio, 69; *Baird* v. *Mayor, etc., of N. Y.,* 96 N. Y. 567; *Key* v. *Jennings,* 66 Mo. 356;

*Hunt* v. *Blanton,* 89 Ind. 38. As to the circumstances under which this rule will be applied, see cases collated in 21 Amer. & Eng. Enc. Law, p. 80, note 2.

Under the findings of fact in respect to plaintiff's acts and conduct for a period of six months after he discovered the fraud and deceit practiced upon him, he is not entitled to the relief demanded in his complaint.

Order reversed.

(Opinion published 57 N. W. Rep. 1134.)

