# H. L. EVERSON v. J. L. OWENS MANUFACTURING COMPANY AND OTHERS.[1]

## February 27, 1920.

## No. 21,537.

**Rescission of contract — laches.**

1. A party who has been induced to enter into a contract by fraud may affirm or rescind the contract at his option, but in order to rescind he must act promptly after discovering the facts. The right to rescind is lost by a delay of more than two years without explanation or excuse.

**Contract — identity of contracting party.**

2. A person has the right to determine for himself with whom he will enter into contractual relations, and, as a general rule, cannot be held to a contract with a party with whom he never intended to deal.

**Avoidance of contract because of mistaken identity of other party.**

3. Where a person who intended to contract with a certain party contracts with another, in the belief that such other is the party with whom he intended to deal, he may repudiate the contract on the ground that he never knowingly dealt with such other.

**No avoidance of contract because of mistaken identity of other party.**

4. Where a person contracts with another with no reason to believe that he is dealing with a different party, he cannot invoke the doctrine of mistaken identity to avoid the contract, although he may have believed that the other owned property which in fact belonged to a third party. If deceived to his injury his remedy is on the ground of fraud.

Action in the district court for Hennepin county to recover $2,000. The facts are stated at the beginning of the opinion. The case was tried before Fish, J., who when plaintiff rested granted defendant's motion for a directed verdict. From an order denying his motion to amend the complaint and his motion for a new trial, plaintiff appealed. Affirmed.

*Orin M. Oulman,* for appellant.

*Selover, Schultz & Selover,* and *J. A. Mansfield,* for respondents.

[1]Reported in 176 N. W. 505.

TAYLOR, C.

Plaintiff brought this action to recover $2,000 paid for 20 shares of the capital stock of the J. L. Owens Manufacturing Company, alleging that the defendants, by false and fraudulent representations, had induced him to buy this stock in the belief that it was capital stock of the J. L. Owens Company, a different corporation, and that he had rescinded the contract of purchase on account of this deception. At the close of plaintiff's evidence, defendants rested without offering any evidence, and made a motion for a directed verdict on the ground that plaintiff had failed to prove a cause of action. The court granted this motion, and assigned as one of the reasons therefor that plaintiff had not attempted to rescind until more than two years after he had discovered the alleged deception. Plaintiff made a motion for a new trial and appealed from an order denying his motion.

Plaintiff neither alleged nor proved any actual damage. He made no claim, either in his pleading or his testimony, that the stock which he had received was not worth the full amount paid for it. He based his right to recover solely on the claim that he had been induced by false representations to purchase stock in one company, in the belief that it was the stock of the other company, and that he had rescinded the contract on this ground. If his charge was true, he had the right to rescind, if he acted promptly after discovering the fraud, although he had suffered no damage.

For many years the J. L. Owens Company, first as a partnership and later as a corporation, had manufactured and sold grain cleaning machines, bean and pea threshers and other similar machinery. Certain outside parties obtained an option to purchase the stock of the principal stockholders of the company, and, in 1908, organized the J. L. Owens Manufacturing Company to take over this stock. The options lapsed and this deal fell through, but an arrangement was made by which the J. L. Owens Manufacturing Company was to take over all the stock of the J. L. Owens Company and issue its own stock to the stockholders of that company and to certain of the outside parties. This arrangement was substantially carried out. The old company had issued in all 610 shares of stock. The new company acquired all of this stock, except 20 shares held by an estate which could not transfer it at that time, and

thereby practically became the owner of the old company. The stock-holders of the old company and the outsiders who were parties to the arrangement became the stockholders of the new company. A contract was executed between the two companies, by which the new company took the entire output of the old company at the cost of manufacture plus a profit of six per centum, and was constituted the exclusive selling agent for such products. Thereafter the officers of the two companies were largely the same persons, and, although from a legal standpoint the old company held the title to the factory and operated it, and the new company took the output under the above contract, they seem to have carried on much of the business without making any distinction between the two companies.

Plaintiff had been engaged in the machinery business in the state of Wisconsin for the A. W. Stevens Company for several years and had seen, and, to some extent, was familiar with the machinery manufactured by the J. L. Owens Company. Learning that managing agents were being employed in different states for the sale of this machinery, he wrote the J. L. Owens Company in November, 1909, soliciting employment as a managing agent. His letter was answered by the J. L. Owens Manufacturing Company, which was the only company employing agents for the sale of such machinery. The letterheads used by the company bore a printed statement to the effect that the company was the largest manufacturer of grain cleaning machinery in the world, and had its factory and office at Dartmouth avenue and Superior street in Minneapolis. Plaintiff, having no knowledge concerning the matter, assumed that there was only one company and that its correct corporate name was "J. L. Owens Manufacturing Company." Considerable correspondence with the J. L. Owens Manufacturing Company followed, in which he was informed that a managing agent was required to take a certain amount of the capital stock of the company. He made two visits to the office at the factory for personal conferences with the officers of the company. During these visits he was shown through the factory, and it was referred to as the factory of the company.

At the last of these interviews, and on December 27, 1909, he entered into a written contract with the J. L. Owens Manufacturing Company by which he became the exclusive sales agent of the company for the state

of Wisconsin. At the same time he purchased the stock in controversy in order to comply with the requirement that such an agent must be a stockholder. He began his duties as state agent on January 1, 1910, and continued in that capacity until August, 1911, when he resigned. During the term of his employment the business letters written him were usually signed: "J. L. Owens Company" and he received his salary from that company. He alleged in his complaint that he did not discover that he had been deceived until about the time he resigned. On November 6, 1913, he attempted to rescind the contract for the purchase of the stock, by tendering the stock to the J. L. Owens Company, and demanding the amount which he had paid for it with interest. Both tender and demand were refused. He made no tender to the J. L. Owens Manufacturing Company, the company which had issued the stock and with which he had made his contract. But passing the question of whether he could make a valid tender to the other company, we have the question of whether he had lost his right to rescind by failing to exercise it for more than two years after discovering the fraud without offering any explanation or excuse for the delay.

When a party who has been induced to enter into a contract by fraud discovers the fraud, he may affirm or rescind the contract at his option, but in order to rescind he must promptly repudiate the contract and tender back what he has received under it. He cannot sleep upon his rights, but must be reasonably diligent in seeking his remedy, and, if he delays beyond a reasonable time, his right to rescind is lost. Parsons v. McKinley, 56 Minn. 464, 57 N. W. 1134; Marshall v. Gilman, 47 Minn. 131, 49 N. W. 688; McQueen v. Burhans, 77 Minn. 382, 80 N. W. 201; Gunderson v. Halvorson, 140 Minn. 292, 168 N. W. 8. Plaintiff delayed for more than two years after discovering the alleged deception. There is no sufficient explanation of this delay, and under the rule governing such cases he must be held to have waived his right to rescind.

Plaintiff further contends that he was mistaken in the identity of the party with which he contracted, and that the contract was a nullity for that reason.

It is recognized that a person has a right to determine for himself with whom he will enter into contractual relations, and that, as a general rule, he cannot be held to a contract with a party with whom he

never intended to contract. The cases sustaining this doctrine are collected in a note in L.R.A. 1916D at page 801. The cases in which one party has been permitted to repudiate his contract, on the ground that he was mistaken as to the identity of the other, have usually been cases in which the other party has either represented himself to be another person, or has accepted an offer intended for another person. Cundy v. Lindsay, 6 English Rul. Cas. 211, is probably the leading case on the subject, and is cited by both English and American courts. In this case a swindler, who had rented a room on the same street on which a reputable and well-known firm had its place of business, sent an order for goods to a manufacturer, in which he simulated the signature of this firm. The manufacturer, believing the order was sent by this firm, shipped the goods, which were received and sold by the swindler. It was held that the manufacturer had made no contract with the swindler, of whose existence he was ignorant, and had not parted with title to the goods.

In Anson, Contracts (14th ed. issued in 1917) the author states at page 164:

"Mistake of this sort can only arise where A contracts with X, believing him to be M: that is, where the offeror has in contemplation a definite person with whom he intends to contract. It cannot arise in the case of general offers which any one may accept, such as offers by advertisement, or sales for ready money. In such cases the personality of the acceptor is plainly a matter of indifference to the offeror."

At page 165 he further states:

"If a man accepts an offer which is plainly meant for another, or if he becomes party to a contract by falsely representing himself to be another, the contract in either case is void, or, to put it more accurately, no contract ever comes into existence. In the first case one party takes advantage of the mistake, in the other he creates it.

"The reports furnish us with no case of genuine mistake, in which A makes an offer to M believing him to be X, and M accepts believing the offer to be meant for him."

Pollock, in his work on Contracts (8th ed.), after remarking that the question cannot arise unless it is material for one party to know who the other is, states at page 495:

"In principle, however, the intention of a contracting party is to create an obligation between himself and another certain person, and if that intention fails to take its proper effect, it cannot be allowed to take the different effect of involving him without his consent in a contract with some one else. In oher words, an offer made to one man cannot be accepted by another."

In Fitzpatrick Building Co. v. Healy, 120 Minn. 237, 139 N. W. 495, it was said by this court:

"Where it appears that one, without negligence on his part, has been induced by another's conduct to enter into apparent contractual relations with or to receive the benefit of the services of such other person, when he has the right to believe that he is dealing with a third person, and it further appears that to hold him liable to any one except the person with whom he believed he was dealing will result in loss to him, he will not be held so liable. To hold otherwise would be to establish a contract which at least one of the parties never intended to make, and likewise to force a contract upon a party which he did not voluntarily enter into, to his damage and against his protest, and this without the existence of all the elements of a purely implied contract."

Where a person, who intended to contract with a certain known party, is induced to contract with another party, in the belief that such other party is the party with whom he intended to deal, he may repudiate the apparent contract, on the ground that he never knowingly dealt with such other party and that no contract ever came into existence. Gordon v. Street, 15 Times Law Rep. 445; Brighton Packing Co. v. Butchers S. & M. Assn. 211 Mass. 398, 97 N. E. 780; Consumers' Ice Co. v. E. Webster, Son & Co. 32 App. Div. 592, 53 N. Y. Supp. 56; School Sisters v. Kusnitt, 125 Md. 323, 93 Atl. 928, L.R.A. 1916D, 792. This last case, as remarked by the annotator in L.R.A., falls more naturally within the field of fraud than within the field of mistaken identity. But where a person enters into a contract with another, having no other party in mind and hence with no reason to believe that he is dealing with a different party, he cannot invoke the doctrine of "mistaken identity" to avoid the contract. King's Norton Metal Co. v. Edridge, Merritt & Co. 14 Times Law Rep. 98; see also Clement v. British Am. Assurance Co.

141 Mass. 298, 5 N. E. 847; Pizzutielle v. Graham, 56 Misc. 584, 106 N. Y. Supp. 1099.

Plaintiff knew that he was dealing with the J. L. Owens Manufacturing Company. All the letters received by him prior to the execution of the contract were written and signed by that company, and all his letters, except the first, were written to that company. He conferred with the officers of that company, made a formal contract with that company, and for more than a year and a half managed and conducted the business of that company in the state of Wisconsin. He made no inquiry concerning the organization of the company or the property owned by it, and had no knowledge of the existence of the other company. The case which he presents is not a case of contracting with one company in the belief that he was contracting with another, but a case of contracting with the only company of whose existence he had knowledge, under a mistaken belief concerning its property and property rights. If the facts concerning the relation which the two companies bore to the property were wrongfully concealed from him to his injury, he doubtless had a cause of action for the deceit, and might have rescinded the contract on that ground, if he had elected to do so with reasonable promptness after learning the facts. But he is not in position to repudiate the contract under the doctrine of mistaken identity.

Order affirmed.