VICTOR PLANTZ, Administrator, Appellee, v. KREUTZER & WASEM, et al., Appellants.

**LIMITATION OF ACTIONS:** Amendment After Bar of Statute. A
1  plea of negligence, duly entered before an alleged cause of action is barred by the statute, may, after a time when the bar would otherwise attach, be amplified by amendment, without subjecting the pleader to the charge of pleading a new cause of action. Amendment reviewed, and held to simply amplify a former plea.

**APPEAL AND ERROR:** Reversal—Retrial on Same Testimony. A
2    holding on appeal that the record did not entitle plaintiff to go to
the jury on an issue of negligence is absolutely conclusive on the
trial court on retrial on substantially the same record.

*Appeal from Marshall District Court.*—JAMES W. WILLETT,
Judge.

JUNE 25, 1921.

REHEARING DENIED OCTOBER 18, 1921.

ACTION to recover damages for personal injury claimed to
have been caused by the negligence of the defendants. Verdict
for the plaintiff, and defendants appeal.—*Reversed.*

*C. H. Van Law,* for appellants.

*C. H. E. Boardman,* for appellee.

FAVILLE, J.—This is the second appeal of this cause. The
former opinion of this court is reported in 175 Iowa 562. In the
opinion in the former appeal, we set out very fully the facts in
the cause, and it is, therefore, unnecessary for
us to restate the same at length in this opinion.

1. LIMITATION OF ACTIONS: amendment after bar of statute.

Since the former trial of the action, the original
plaintiff has died, and the appellee, as administrator, has been
substituted as plaintiff. Upon the former appeal, the cause was
reversed, and this appeal is prosecuted from a judgment for the
plaintiff upon the second trial.

I.    The injury out of which this action arose occurred on
August 8, 1912. Plaintiff's original petition was filed on October
9, 1912. In said petition, among other grounds of negligence, the
plaintiff specified the following grounds:

"Defendants were negligent in providing an unmanageable
team for plaintiff, with which to carry on his work."

On January 21, 1914, before the first trial of the cause, the
plaintiff amended his petition, and, among other things, alleged
as follows:

"That defendants were negligent in providing an unmanage-
able team, without notice to plaintiff, which team possessed the

trait or characteristic of rushing up steep inclines, and particularly the incline leading from the north door of defendants' lumber yard up onto Nevada Street, all of which was unknown to plaintiff.''

After the reversal of this cause, and on April 1, 1919, the appellee filed a further amendment to his petition, as follows:

''That defendants furnished to the plaintiff's intestate, without notice to the plaintiff's intestate, a team, one or both of which had the trait or characteristic of suddenly starting or jumping or rushing up the incline at the north door of defendants' yard, described in the petition, which doorway was low, and unsafe when approached from the south with the team in question.

''That, on or about August 8, 1912, the said team, without any indication, suddenly rushed said slope, and plaintiff's intestate was caught, and injured as described in the petition, and from that injury has since died.

''That defendant had failed to warn plaintiff's intestate of this habit, characteristic, and trait of the team furnished him by the defendant, and by and on account thereof, plaintiff's intestate was caught unawares and unprepared, and as a result, received the injury described in the petition, from which injury the plaintiff's intestate suffered, languished, and died.''

As disclosed in the former opinion of this court, the ground of negligence set forth in the foregoing portions of the petition and first amendment was not submitted to the jury at the first trial. It is the appellants' contention that the court erred in not sustaining appellants' demurrer to the last amendment, filed April 1, 1919, the claim being that this was, in effect, pleading a new cause of action and a new basis of recovery, and that, at the time the amendment was filed, the cause of action so pleaded was barred by the statute of limitations. We have held that, if an amendment to a petition states a new and independent cause of action, it is to be treated as the commencement of a new suit, and that, if the period of limitation upon such cause of action has intervened, the amendment is demurrable. *Box v. Chicago, R. I. & P. R. Co.*, 107 Iowa 660; *Brooks v. Seevers,* 112 Iowa 480; *Gordon v. Chicago, R. I. & P. R. Co.*, 129 Iowa 747; *Van Patten v. Waugh*, 122 Iowa 302.

We have also held, however, that, if the new matter so pleaded by amendment does not state a new cause of action, but merely amplifies and enlarges a charge made in a prior pleading, or states new grounds or specifications properly germane to such charge or allegation, the amendment so made will be upheld, notwithstanding the provisions of the statute of limitations. *Kuhns v. Wisconsin, I. & N. R. Co.*, 76 Iowa 67; *Williamson v. Chicago, R. I. & P. R. Co.*, 84 Iowa 583; *Thayer v. Smoky Hollow Coal Co.*, 129 Iowa 550; *Cahill v. Illinois Cent. R. Co.*, 137 Iowa 577; *Taylor v. Taylor*, 110 Iowa 207.

Applying this rule to the instant case, we are of the opinion that the amendment filed April 1, 1919, was not the pleading of a new cause of action, or the specification of a new, separate, and distinct ground of negligence; but that it merely amplified and enlarged and made more definite and specific the ground of negligence previously alleged in the original petition and in the amendment thereto of January 21, 1914, as above set forth; and that the appellants' demurrer was properly overruled.

II.    The vital question on this appeal is whether or not the court should have permitted the case to go to the jury on the grounds of negligence specified in the petition as amended.    On

2. APPEAL AND ERROR: reversal: retrial on same testimony.

the first trial of the case, the appellants moved the court for a directed verdict in their favor on various grounds, among them being that the evidence failed to show any negligence on the part of the appellants in the matters charged in the petition. As the petition then stood, one of the matters so charged was the ground of negligence now relied upon in respect to the characteristics of the team.  This motion for a directed verdict was overruled, and the court, on its own motion, withdrew this ground of negligence from the consideration of the jury.  On the former appeal, we considered and set out at length the evidence in the case, and also set out the grounds of the defendants' motion to direct a verdict, and, on review of the entire case, as then made, we held that the defendants' motion for a directed verdict should have been sustained.  Upon the retrial of the cause, the court withdrew from the consideration of the jury all grounds of negligence except the alleged negligence in furnishing an unsafe team, possessing the characteristic of rushing up the incline leading from

the north door of the appellants' lumber yard, and in failing to warn the appellee's decedent of said alleged habit or characteristic of said team.

It is now contended in behalf of appellee that, inasmuch as these grounds of negligence were withdrawn from the consideration of the jury at the former trial, they were not reviewed or considered by this court, and that our declaration to the effect that the motion for a directed verdict should have been sustained is in no way a determination of the question as to this particular ground of negligence. That was the view taken by the trial court in submitting the question to the jury. The question submitted upon the former hearing of this case in this court was not merely as to whether the trial court erred in the submission of the grounds of negligence that were submitted to the jury, but also whether or not the lower court erred in said trial in not sustaining the appellants' motion for a directed verdict. We reviewed the evidence, the grounds of negligence, and the grounds of the motion, and held that, upon the entire case as then made, the court should have sustained the motion for a directed verdict. Upon a retrial of the cause on such a state of the record, the appellee was entitled to offer further and additional evidence, if such was at his command, respecting the negligence alleged in his petition. *Landis v. Interurban R. Co.,* 173 Iowa 466; *Meadows v. Hawkeye Ins. Co.,* 67 Iowa 57; *Bruce v. Galvin,* 183 Iowa 145.

On the retrial of this case, the testimony in behalf of the appellee was substantially that offered on the former trial, and was, to a large extent, offered from the transcript of the record upon such trial. Respecting the very ground of negligence now relied upon and submitted to the jury, there was no substantial change in the testimony as offered upon the former trial. The particular claim now made is that the evidence shows that there was an incline or rise in the ground at the north side of the lumber yard; that, in order that appellee's decedent might drive from the shed through the open door on the north side, it was necessary to drive up this incline; and that it was one of the habits or characteristics of the team, when about to draw a heavy load up such an incline, to suddenly start or jump up the incline, until the load was drawn to the level ground. The appellee now

claims that this characteristic rendered the team unmanageable and unsafe; that the appellants were advised of this peculiarity and characteristic, and did not warn or notify the appellee's decedent thereof.

As before stated, the evidence in this regard on the last trial was practically identical with the evidence in this respect on the former trial. We held before that the motion for a directed verdict should have been sustained. There is no substantial change in the record, and we now hold that the appellants' motion for a directed verdict at the close of all the testimony should have been sustained.

In our former opinion, we described at length the situation and facts surrounding this injury. The appellee's decedent was on the load of planks on the wagon to which the team was hitched. He had driven into the lumber shed, and stopped the horses with their heads under or at the opening on the north side of the building. We said:

"It was apparent that he could not pass through that opening, upon that load of lumber upon which he was at the time, without adjusting himself to the conditions that confronted him. He knew, or by the exercise of ordinary thoughtfulness should have known, that, if he attempted to pass through that doorway, without adjusting himself to the conditions there apparent and open to him, he must of necessity come in contact with the top of that doorway. He stopped there, wound his lines around the deck or stake, and proceeded to finish his load. After he had finished it, he reached for the lines, grabbed them, and the horses started. That the horses might start under those conditions was just as apparent to him as to the defendants or any of their employees. That, if they did start before he was adjusted in his position to the conditions that confronted him, he would be brushed off the load, was just as apparent to him as to the defendants or any of their employees."

We held that the horses did not start until appellee's decedent grabbed the lines, and we held that the appellee's decedent failed to adjust himself to meet the conditions before him at the time he grabbed the lines, and thereby started the team. We said:

"That the act of grabbing the lines might suggest to the

horses that he desired them to proceed forward was as apparent to him as it was to the master. The only act to which the sudden movement of the horses can be traceable is the act of the plaintiff in grabbing the lines.''

The specific matter now claimed is that the team started up the incline suddenly; that they had a habit of so doing; and that the appellants were negligent in not warning appellee's decedent of such habit. On the former appeal, we said:

''He must have understood, and therefore appreciated, the fact that it was necessary for him to adjust his position, in view of the load and the height of the door above the load, before starting the team. Without doing this, however, as he says, he grabbed for the lines, and the horses started. There is no evidence that the horses started from any other cause than the act of the plaintiff. That they started from any other cause, in view of the whole record in this case, is a mere matter of speculation and surmise, and based upon no tangible evidence. The court withdrew from the consideration of the jury any charge of negligence based on alleged vice in this team. In the face of this record, the fact seems to be conclusively established that this team was never known to start except on suggestion from the driver that they should start. The only evidence to the contrary is the testimony of Hausafus, who said, 'This Tim horse had the habit of jumping when he started;' but confines this statement to the fact that this occurred when this horse was driven single. He said that this occurred when he was teaming. He said that, when he was teaming, he drove this 'Tim horse' single. There is no evidence that this team, as then constituted, was ever known to start without command. The evidence is that this team never did start without command, or something to indicate that it was desired that they should start.''

The claim is now made that, when starting up an incline the team would jump or rush to the level ground. As before stated, the evidence was practically identical with that on the former trial. The appellee's decedent stood on the wagon, but a few feet from the opening through which he was to pass. The heads of the horses were at the edge of the opening. If the appellee's decedent had adjusted his body in a position to pass through the opening, before he grabbed the lines which started the team, it

would have been wholly immaterial whether the team passed quickly or slowly through the opening. There were but a few feet from the appellee's decedent to the opening where he was injured. We held on the former appeal, and we now hold, that it was the duty of the appellee's decedent, under the circumstances as they were then known and apparent to him, to adjust himself in a proper position to go through the opening in the side of the building, before he grabbed the lines and started the team. If he had so done, and if he had been in such a position, whether the team would have passed quickly up the incline beyond the opening or slowly could have made no difference, so far as the injury to the appellee's decedent was concerned.

We think the lower court was right on the first trial in withdrawing this ground of negligence from the consideration of the jury. We held, on the former appeal, that the motion for a directed verdict, which involved a failure of proof on this ground of negligence, should have been sustained; and we now hold that the appellants' motion for a directed verdict at the close of all of the evidence on the last trial of the case should have been sustained.

The evidence and the law applicable to the case having been reviewed so fully upon the former appeal, further discussion is unnecessary. It is also unnecessary to discuss other questions argued.

The judgment of the district court must be, and the same is, —*Reversed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.