ANTON REINERTSON et al., Appellees, v. A. D. STRUTHERS et al.,
Appellants.

**LIMITATION OF ACTIONS:** Pleadings—Remedy—Changing Amend-
1    ment. A plaintiff who, in a timely brought action, pleads a rescis-
sion of a fraud-induced contract, and prays for judgment for the
consideration paid, and who, after discovering his inability to prove
the pleaded rescission, and after the statute of limitation has fully
run against his cause of action, amends his pleadings by praying
for damages consequent upon the fraud, does not thereby plead a
*new cause of action.* He simply exercises his permissible right *to
change the remedy.* (See Book of Anno., Vol. 1, Sec. 11007, Anno.
480 *et seq.*)

**ELECTION OF REMEDIES:** Finality of Election—Right to Change
2    Remedy. A plaintiff who pleads a rescission of a fraud-induced
contract, and prays for judgment for the consideration paid, may,
upon discovering his inability to prove the rescission, amend his
pleadings and pray for damages caused by the fraud. (Note that
the reverse of this proposition presents a different rule.) (See
Book of Anno., Vol. 1, Sec. 9998, Anno. 59 *et seq.;* Sec. 10002.)

**ACTIONS:** Commencement—Laches—Effect on Law Action. The doc-
3    trine of laches, in the absence of elements of estoppel, finds no ap-
plication to an action at law. (See Book of Anno., Vol. 1, Sec.
11007, Anno. 12.)

**TRIAL:** Instructions—Stating Withdrawn Issue. It is not necessarily
4    prejudicial error for the court, in outlining the issues, to refer to
withdrawn issues, when the jury is specifically directed to disre-
gard them.

**CONSPIRACY:** Civil Liability—Evidence. Conspiracy need not be
5    shown by direct evidence, but may be shown by proof of concert
of action and by the declarations, conduct, and acts of the parties.
So held as to a conspiracy to effect a fraudulent sale of corporate
shares of stock.

**TRIAL:** Verdict—Construction in Light of Record. The certain and
6    unmistakable data furnished by the trial record may quite clearly
point out the intention of a jury in returning a somewhat indef-
inite verdict. So held as to the inclusion of interest. (See Book
of Anno., Vol. 1, Sec. 11508, Anno. 22 *et seq.*)

Headnote 1: 37 C. J. p. 1080. Headnote 2: 20 C. J. p. 22. Headnote
3: 1 C. J. p. 1153. Headnote 4: 38 Cyc. p. 1787. Headnote 5: 12 C. J.
p. 633. Headnote 6: 38 Cyc. p. 1881.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

FEBRUARY 9, 1926.

REHEARING DENIED MAY 11, 1926.

ACTION at law against a corporation and certain of its officers, directors, and employees, to recover damages for false and fraudulent representations inducing a purchase of its capital stock. From a judgment for plaintiffs, the defendants appeal.—*Affirmed.*

*Clark & Byers,* for appellants.

*Chester J. Eller* and *Lehan T. Ryan,* for appellees.

VERMILION, J.—The action as originally brought was to recover the amount alleged to have been paid by the appellee Anton Reinertson to the appellant Bankers' Loan & Investment Company for 120 shares of its capital stock.

1. LIMITATION OF ACTIONS: pleadings: remedy: changing amendment.
It was alleged that the purchase was induced by fraudulent representations on the part of the individual appellants, who were the officers and directors of the corporation, and that appellee had rescinded the contract of purchase and tendered back the stock so purchased.

After the expiration of five years from the completed sale of the stock, the appellee filed an amendment to the petition, in which, after repeating and amplifying the allegations of fraud, he alleged "that by reason of said representations the said plaintiff has been damaged in the sum of $15,000, with interest" from the date of purchase, and alleged that, at the time of the purchase, and at all times since, the stock was "absolutely worthless and said company insolvent." A motion to strike this amendment was overruled. The motion did not raise the question of the statute of limitations.

At the close of appellee's evidence, the appellants moved for a directed verdict, on the ground, among others, that appellee had not established a rescission of the contract of purchase of the stock. Counsel for appellee then claimed the right,

under the foregoing allegation of the amendment to the petition, to have the case submitted to the jury as an action for damages for deceit in the sale of the stock. Thereupon the appellants interposed a plea that the cause of action was barred by the statute of limitations at the time the amendment was filed.

The court submitted the case to the jury as an action for damages for deceit, and instructed that appellee's claim was not barred by the statute of limitations. This amendment and the submission of the cause to the jury on the theory of an action for damages for deceit give rise to the principal complaints made in this court.

I.    It is insisted that, the amendment being assumed to set up a claim for damages for false representations in the sale of the stock, it was the pleading of a new cause of action, which was barred by the statute of limitations.

The basis of appellee's claim, whether to recover what he had paid, as upon a rescission of the contract of purchase, or to recover damages without a rescission, and while retaining whatever he had received, was the alleged fraudulent representations by which he was induced to buy the stock. Whether, if he established the fraud, he recovered the purchase price, upon allegation and proof of a rescission, or the damages sustained, without a rescission, pertained only to the remedy. The cause of action in either event was the fraud. And in this case there was no material difference in the remedy sought. In the original petition, judgment for $16,000 and interest was asked, and in the amendment, the damages were alleged to be $15,000 and interest. There was testimony that the stock was worthless.

In *Case v. Blood,* 71 Iowa 632, where it was claimed that a new cause of action was set up in an amendment, and was barred, we said:

"The cause of action, in both the original and amended petitions, is the failure of the defendants to equitably divide the assets of the district township. The relief asked is not identical in these separate pleadings. * * * It will not be disputed that the remedy sought is not the cause of action, and is no

part of it. The cause of action, if valid, entitles the plaintiff to a remedy. In a proper case, he may change his claim for the remedy, without in any manner presenting a new cause of action. This was done by the plaintiff in this case. The action after the amendment was simply a continuance of the original action, with a claim for a different remedy."

See, also, *Williamson v. Chicago, R. I. & P. R. Co.*, 84 Iowa 583.

We are of the opinion that the amendment simply sought another and different remedy in the cause of action set up in the original petition, and that the court properly held that the amendment did not set up a new cause of action, and that plaintiff's claim to recover damages was not barred by the statute of limitations. The following cases, in principle, sustain our conclusion. *Taylor v. Taylor*, 110 Iowa 207; *Van Patten v. Waugh*, 122 Iowa 302; *Thayer v. Smoky Hollow Coal Co.*, 129 Iowa 550; *Anderson v. Acheson*, 132 Iowa 744; *Cahill v. Illinois Cent. R. Co.*, 137 Iowa 577; *Bridenstine v. Iowa City Elec. R. Co.*, 181 Iowa 1124; *Hueston v. Preferred Acc. Ins. Co.*, 184 Iowa 408; *Hoegh v. Miller*, 190 Iowa 557; *Plantz v. Kreutzer & Wasem*, 192 Iowa 333; *Emeny v. Farmers Elev. Co.*, 194 Iowa 282.

II. It is the contention of appellants that appellee, having once elected to rescind the contract, is estopped to stand on his contract and recover damages for the fraud by which he was induced to enter into it. Appellee, upon

2. ELECTION OF REMEDIES: finality of election: right to change remedy.

discovering the fraud, had a right to rescind the contract and recover the purchase price, or to retain the stock purchased and recover his damages. It is well settled that an action for damages with full knowledge of the facts would estop him from thereafter attempting to rescind, for it would be a recognition of the contract. It would be an election of remedies, by which he would be bound. *McLean v. Ficke*, 94 Iowa 283; *Theusen v. Bryan*, 113 Iowa 496; *Tidgwell v. Bouma*, 176 Iowa 47; *Ellis v. Annis & Rohling*, 187 Iowa 423. But where he attempts to rescind, and fails to establish the fact that he had rescinded, and for that reason alone fails to secure relief on the basis of a rescission, he is not thereby estopped to recover the damages caused

to him by being induced by fraud to enter into the contract. This is true because he had no remedy by rescission; and where a party undertakes to avail himself of a remedy to which he is not entitled, this does not prevent him from subsequently availing himself of a remedy to which he is entitled. *Redhead Bros. v. Wyoming Cattle Inv. Co.*, 126 Iowa 410; *Lemon v. Sigourney Sav. Bank*, 131 Iowa 79; *Wells v. Western Union Tel. Co.*, 144 Iowa 605; *Fisk v. City of Keokuk*, 144 Iowa 187.

Moreover, the failure to secure relief based upon a rescission, unless for a failure to establish the fraud, simply leaves the party who sought it in the attitude of having conclusively affirmed the contract. But affirmance of the contract does not waive the fraud, nor bar the right to recover damages, but bars a subsequent rescission merely. *Van Vliet Fletcher Auto. Co. v. Crowell*, 171 Iowa 64; *Bean v. Bickley*, 187 Iowa 689; *Mendenhall v. Kallem*, 191 Iowa 987.

In *Redhead Bros. v. Wyoming Cattle Inv. Co.*, supra, the vendor began an action to recover the purchase price of personal property sold, and later amended by claiming damages for an alleged breach of the contract. It was held that there was no inconsistency in the claims and no election of remedies.

In *Zimmerman v. Robinson & Co.*, 128 Iowa 72, the plaintiff had attempted to rescind, and been defeated, and thereupon amended, claiming a breach of warranty; and it was held that there was no election of remedies.

In *Rice v. Friend Bros. Co.*, 179 Iowa 355, where it was held that the defendants could not return certain paint and recover the purchase price, we said:

"While there is illy considered language in cases which, on careless reading, would lead one to think that, if one attempts to rescind and fails, there is a conclusive election, and that in such event he may, in the very case in which he made an abortive attempt to rescind, neither rescind nor set off damages in reduction, we think such is not the law, and that it is overwhelmingly settled that, though it be rightly held the goods have been accepted, and that, therefore, the buyer may neither rescind nor repudiate the contract, he yet may, either by counterclaim or as matter of defense, present that against the price there

should be set off what the buyer proximately lost through false representation or breach of warranty, the only difference in that respect between a counterclaim and pure defense being that on counterclaim the recovery might be more than the purchase price.''

And, referring to cases holding that, where there is a failure of consideration or breach of warranty, the vendee may elect to sue on the warranty, or rescind and sue for the money paid, we further said:

''This, however, is not, as appellant seems to think, couched in terms of exclusion; at least, not where all is done in the same case. It does not mean that the vendee defendant must succeed in an attempt to rescind, or, failing, cannot set off his damages for breach of warranty or failure of consideration. It does mean that, if he *does* rescind, he may not so offset.''

See, also, *Marshall v. Gilman,* 47 Minn. 131 (49 N. W. 688); *Gunderson v. Halvorson,* 140 Minn. 292 (168 N. W. 8); *Van De Wiele v. Garbade,* 60 Ore. 585 (120 Pac. 752).

What was said in *Ellis v. Annis & Rohling,* supra, when considered in relation to the facts there involved, is not inconsistent with our conclusion that appellee is not estopped to recover his damages. There, the plaintiff, after electing to pursue a remedy at law, sought in equity to secure a rescission. This was denied, and then it was claimed that, although plaintiff was not entitled to rescission, the court, sitting in equity, should have awarded damages for the fraudulent representations. Concerning this last claim we said:

''The failure of plaintiff to obtain the relief prayed does not operate to revive her action for damages upon the ground of fraud. * * * The amended and substituted petition does not contain a prayer for alternative relief; and in any event she cannot join an action at law for damages on account of fraudulent representations, inducing the execution of a contract, with a suit to rescind upon the same ground.''

Here, in an action at law based upon a claimed rescission, the court found that there was no rescission, but, under an allegation of the amended petition, which we agree with the trial court was sufficient to present a claim for damages, sub-

mitted the latter claim to the jury. The allegation in the amendment was not assailed below on any ground now urged. The appellee, by his unsuccessful attempt to rescind, or his claim to recover as upon a rescission, was not estopped to recover his damages, and we think he could do so in this action under the allegation of the amendment.

III. The action, as submitted to the jury and before us on this appeal, is at law for the recovery of damages. No question of rescission is now involved. The right to commence the action would continue until barred by the statute of limitations. The doctrine of laches, in the absence of elements of estoppel, finds no application to an action at law. *Doyle v. Burns,* 123 Iowa 488; *Thomas v. Holmes,* 142 Iowa 288; *Wells v. Western Union Tel. Co.,* supra.

3. ACTIONS: commencement: laches: effect on law action.

IV. The testimony of appellee tended to show that he purchased the stock in question from the appellant corporation upon the representation of certain of the individual appellants, and that he paid for it by turning over a note secured by a mortgage for $35,000; that in the same transaction he received certain stock in the Consolidated Chemical Products Company, and the return of a certain note or notes which he had previously given for stock in the latter corporation; that the $35,000 note and mortgage were to be taken by the Western Life Insurance Company, which latter corporation was to furnish the money to the Bankers' Loan & Investment Company in payment for the stock. Appellee testified that the appellant Struthers said:

"He would treat the mortgage the same as cash, sell it to the Western Life, and turn the money over to the Bankers' Loan & Investment Company, and that it would go through the same as cash. * * * He said: 'Now you understand you take $15,000, that mortgage, and I will do as I agreed to: I will buy it, the same as cash, and turn the money over to the Bankers' Loan & Investment Company, and then you take $20,000 in the Consolidated Chemical Company.''

Appellants introduced, in connection with the cross-examination of appellee, a written instrument signed by appellee

and the Consolidated Chemical Products Company, by Struthers, as president, in which receipt of the mortgage is acknowledged, for which 100 shares of the stock of the Bankers' Loan & Investment Company and 19,000 shares of Consolidated Chemical Products Company stock and appellee's note for $4,000 and a note for $1,100 were to be delivered to appellee, and appellee was to guarantee collection of the mortgage to the Western Life Insurance Company. This instrument contained an addition of later date, signed by appellants Struthers and Jamison and the appellee, as follows:

"The mortgage and notes above mentioned having been this day received we hereby agree to deliver to the said Reinertson within 5 days 120 shares of Bankers' Loan & Investment Co. stock and $16,666 of the Consolidated Chemical Products Co. stock this Oct. 3, 1919. Received above stock Oct. 11th, 1919."

The appellant Struthers was president, and the appellant Jamison was a director, of both the Bankers' Loan & Investment Company and the Consolidated Chemical Products Company. The books of the appellant corporation showed that appellee subscribed for 120 shares of its stock.

The court instructed that the defendants contended that the stock was purchased from the Consolidated Chemical Products Company, and that, if the jury found that plaintiff had failed to establish by a preponderance of the evidence that the stock was purchased of the defendants, or some of them, acting as officers or agents of the Bankers' Loan & Investment Company, the latter corporation would not be liable. This was all that appellants were entitled to at this point. The question was clearly for the jury. If the individual defendants were guilty of the fraud charged in the sale of the stock, it was immaterial, so far as their liability was concerned, for which corporation they were acting.

V. Complaint is made that the court, in stating the issues to the jury, set out claims made in the petition of which there was no evidence. The appellee's plea of tender and claim of rescission were referred to by the court in stating the issues; but the jury was instructed to wholly disregard the claim of rescission, and, in

4. TRIAL: instructions: stating withdrawn issue.

arriving at a verdict, to treat the stock as the property of the appellee. There was no prejudicial error here.

VI. It is also claimed that the court in the instructions set out certain alleged fraudulent misrepresentations charged to have been made to appellee, to induce the purchase of stock, of which there was no evidence. There was evidence in the record sufficient to warrant the submission to the jury of all such representations to which our attention is called in argument.

VII. The petition charged that the individual defendants conspired to obtain money of others by inducing them to subscribe for stock in the appellant Bankers' Loan & Investment Company, and to divert and convert such money so obtained to their own use, and that, under and in pursuance of such fraudulent scheme, they induced appellee to purchase 120 shares of such stock.

It is said that there was no sufficient evidence of such a conspiracy. We cannot assent to this. Conspiracy need not be shown by direct evidence, but may be established by proof of concert of action and by the declarations, conduct, and acts of the parties. *Hanson v. Kline,* 136 Iowa 101. Without setting out the evidence at length, it is sufficient to say that the individual appellants were officers and directors or employees of the appellant Bankers' Loan & Investment Company; that there was evidence tending to show that, a year before the sale of the stock in question, the corporation was insolvent; that it carried on its books assets at fictitious and excessive valuations; that large sums of money had been paid by the corporation to some of the individual defendants for which its books gave no sufficient explanation; that the corporation declared a dividend in January before the sale of the stock to appellee, amounting to over $5,000, when it had earned no profits from which a dividend could be paid, but had operated at a loss all the time, the loss four months prior to the declaration of the dividend amounting to over $23,000.

5. CONSPIRACY: civil liability: evidence.

The chief complaint in respect to the charge of conspiracy is that the evidence fails to show any participation on the part

of the appellants Kudej, Jamison, and Ellis in any fraudulent scheme.

There was testimony that Jamison and Ellis participated with Struthers in making some of the false representations upon which appellee relied in purchasing the stock, and that Kudej, then an employee of the corporation, was present. Kudej began working for the company in its office in June of 1918, and later became its president. There was testimony from which it might have been found that, from the time he entered the office of the corporation, the only other employee in the office was a stenographer, for a portion of the time. Testimony as to subsequent admissions by Kudej showed a knowledge on his part of the fictitious character of the company's assets. The evidence was sufficient to warrant a finding that the situation of the corporation and the character of its operations at the time the stock was sold to appellee were such as that an officer or employee in charge of its office and books must have known the facts.

The evidence fairly established the falsity of the representations made to appellee. The appellants introduced no evidence. We think that the existence of a conspiracy on the part of the individual appellants, and that the representations made to appellee were in pursuance of it, were questions for the jury, and that the verdict in this respect has sufficient support in the record.

VIII. The court instructed that, if appellee was found entitled to recover, he should be allowed the difference between the fair and reasonable market value of the stock at the time of the purchase and its reasonable market value if it had been as represented; that the verdict could not exceed $15,000, with interest thereon at 6 per cent from October 4, 1919, to date, less a dividend of $240 paid to appellee, with interest at 6 per cent from January 9, 1920, the date of payment of the dividend. The verdict fixed the amount of the recovery at "the sum of $15,000, plus 6 per cent, minus $240, plus 6 per cent." The court, on motion of the appellee, rendered judgment on the verdict for $19,474.70, which is the result of computing interest at 6 per

6. TRIAL: verdict: construction in light of record.

cent on the $15,000 and on the $240 from the dates given in the court's instructions, and deducting the one result from the other.

We think that the record affords quite certain evidence that the jury did not include any interest in the $15,000 allowed appellee before the deduction of the $240. This appears from the fact that, while the direction of the court was that $240, "together with interest" from the given date, was to be deducted, it is perfectly apparent that no interest was included in the amount named by the jury as that to be deducted; for it was the same as the amount given by the court as that to which interest should be added before the deduction should be made. It is obvious that the expression in the verdict, "$240 plus 6 per cent," could only refer to past interest, to be computed before the deduction, and not to future interest, since it was only an amount that was to be then deducted from the amount of appellee's damages. Yet the reference to interest on the $15,000 damages and the $240 to be deducted is the same. If interest was not included in one amount, it was not included in the other. In this respect, the situation is to be distinguished from that presented in *Edwards v. McCaddon*, 20 Iowa 520, and *Hunter v. Empire St. Sur. Co.*, 159 Iowa 114, cited by appellants, where there was nothing to indicate that interest to the date of the verdict had not been computed by the jury and included in the amount named, and that the interest mentioned in the verdict did not refer merely to interest from that date.

We have considered the questions presented by appellants in argument, and find no prejudicial error. The judgment is, therefore,—*Affirmed*.

STEVENS, FAVILLE, and ALBERT, JJ., concur.

DE GRAFF, C. J., takes no part.