**FIRST ACCEPTANCE CORP. v. KENNEDY.**

Civ. No. 446.

United States District Court
N. D. Iowa, C. D.

Feb. 26, 1951.

864

Louis Sachs, Minneapolis, Minn., George S. Marty and Harvey J. Bryant, Mason City, Iowa, for plaintiff.

Edward R. Boyle and Louis Schuler, Clear Lake, Iowa, Ray F. Clough, Mason City, Iowa, for defendant.

GRAVEN, District Judge.

On motion for judgment notwithstanding verdict or in the alternative for a new trial. The United States Air Conditioning Corporation was the conditional vendor and the defendant, Sam Kennedy, was the conditional vendee of certain air conditioning equipment; and the plaintiff, First Acceptance Corporation, is the assignee of the conditional sale contract. The United States Air Conditioning Corporation is a Delaware corporation with its principal place of business at Minneapolis, Minnesota. It has not been, and it is not now, subject to service of process in the state of Iowa. The plaintiff, First Acceptance Corporation, is a Minnesota corporation with its principal place of business at Minneapolis, Minnesota. The defendant, Sam Kennedy, was, and is, a resident and citizen of the state of Iowa. The plaintiff, First Acceptance Corporation, as the assignee of the conditional sale contract, brought this action at law in this court to recover a portion of the specified purchase price. The defendant, Sam Kennedy, among other defenses, raised the defense of fraud in the procurement. That defense was the only defense submitted to the jury. The jury returned a verdict in favor of the defendant, Sam Kennedy. The plaintiff thereupon filed the present motion for judgment notwithstanding the verdict or in the alternative for a new trial. The instructions given were not excepted to by either party. Under such circumstances they became and are, the law of the case. Carter Carburetor Corporation v. Riley, 8 Cir., 1951, 186 F.2d 148.

■ As to many of the matters hereafter factually stated the evidence was in sharp dispute. However, at this stage in the proceedings the evidence has to be considered by the Court from the point of view of what the jury could have found the facts to have been under the evidence. Carter Carburetor Corporation v. Riley, supra.

The defendant, Sam Kennedy, is a resident of the city of Clear Lake, Cerro Gordo County, Iowa. For more than forty years he has been engaged in the commercial growing of onions, potatoes, cabbage, sugar beets and other vegetables. He is the Chairman of the Board of Directors of the Iowa State Vegetable Growers' Association and Chairman of the Onion and Potato Committee of a similar national organization. In 1948 he owned approximately 1200 acres of land in the vicinity of Clear Lake, of which approximately 1000 acres were devoted to the growing of crops. The number of acres devoted to the growing of onions varied from 50 acres to 200 acres. In the year of 1948 approximately 75 acres was devoted to onions. The type of onion grown by him was of the storage variety. The harvest of his onion crop usually started in the latter part of August and was usually completed in the forepart of September. His onions, when harvested, were stored in warehouses until marketed. His onions were usually marketed in March of the year following their harvesting. It is essential that onions so stored be kept cool and dry. If not so kept they will deteriorate and thus be unmarketable. For a considerable period of time onions have been dug by mechanical means. The earlier machines used for this purpose merely dug the onions and left them on the ground to be topped and sacked by hand. By 1947, machines which would dig the onions, cut off their tops, run them into sacks and deposit the sacks on the ground were in fairly general use. Starting in 1947 the defendant, Sam Kennedy, used machines of this type. Onions are marketed in sacks containing one bushel, or sixty pounds. Prior to the year 1948 it was the general practice among onion growers to store the onions in sacks in their warehouses. The defendant, Sam Kennedy, in harvesting his onions in 1947, found that the harvesting of onions in sacks tended to slow up the harvesting and warehousing. Thereupon he decided to use pallets in connection with the handling and warehousing. Pallets are large sturdy crates open at the top with slatted sides and bottoms. Six pallets are placed on a truck, the truck then moves through the field with the harvester and the onions are run directly into the pallets. The pallets are then taken to the warehouse and stacked. In the Fall of 1947 and in the Winter of 1948 the defendant commenced the construction of pallets for use in harvesting his 1948 crop of onions. Prior to 1948 the defendant, Sam Kennedy, had used a ventilating system consisting of ducts and forms, known as the King system, in his main or principal warehouse to keep the onions cool and dry. That main or principal warehouse was built in 1940 and had double walls of hollow tile with insulated walls and ceiling.

In the early Spring of 1948 a salesman of the United States Air Conditioning Corporation called on the defendant at Clear Lake for the purpose of interesting him in the purchase of an air conditioning system for his main warehouse. The salesman informed the defendant that he was working under a Mr. F. A. Teigen of the United States Air Conditioning Corporation and asked for an appointment for Mr. Teigen. The salesman described Mr. Teigen as one of the top men in the country in the air conditioning field with long and extensive experience in that field. The request for the appointment was granted and on March 2d, 1948, Mr. Teigen came to Clear Lake and spent the day and the evening with the defendant in connection with the matter of the proposed sale. While there Mr. Teigen familiarized himself with the warehouse and the manner in which the defendant proposed to store his onions in it. At the time the defendant's employees were engaged in the construction of pallets and several hundred had already been completed. After Mr. Teigen had completed his investigation he made a tentative sketch or drawing of a proposed air conditioning system for the main warehouse. Mr. Teigen informed the defendant that he would study

the situation further before making a final proposal, as he wanted to make sure he was right as to what was required to accomplish the purpose. Mr. Teigen informed the defendant that he had spent most of his adult life in the air conditioning field; that he had worked with a Mr. Moore, a pioneer in the air conditioning field, and had had to do with the air conditioning of warehouses all over the country. The defendant was without experience in the air conditioning field. He regarded Mr. Teigen as being an expert in that field.

The defendant and Mr. Teigen next met in the state of Wisconsin. The defendant had planned to go to Wisconsin to see about additional lumber for pallets and had planned on staying at the home of one Emory Owens, an onion grower residing at Dousman, Wisconsin. There was another onion grower, one William Burmeister, residing about twenty miles from Dousman, who had purchased an air conditioning unit for his onion warehouse from the United States Air Conditioning Corporation. Mr. Teigen had in mind selling an air conditioning unit to Emory Owens. Arrangements were made between Mr. Teigen and the defendant to meet at the Owens home. The defendant, a son of the defendant, and Mr. Teigen met at the Owens home and spent the greater part of an afternoon and evening discussing the matter of the proposed purchase. While at the Owens home the defendant and his son went to the Burmeister place and made a brief inspection of his air conditioning unit. Mr. Teigen had brought with him a preliminary blue print of the proposed air conditioning unit for the Kennedy warehouse. In connection with the discussion of the proposed installation Mr. Teigen informed the defendant that "they" had gone into the matter very thoroughly and that the proposed installation was efficient and "would do the job." Mr. Teigen later came to the defendant's home at Clear Lake on one or more occasions in connection with the proposed sale. The defendant on such occasion or occasions informed Mr. Teigen of the necessity of keeping onions dry and cool. Mr. Teigen informed the defendant that he had put a

great deal of thought on the matter and that he "had the right answer."

On April 5th, 1948, the defendant drove to Minneapolis, Minnesota, to confer with Mr. Teigen in regard to the proposed purchase and, in connection therewith, to look over the plant of the United States Air Conditioning Corporation. He was accompanied to the plant by his son-in-law, Kenneth Pearson. They were shown through the plant by Mr. Teigen. While going through the plant Mr. Teigen showed them an air conditioning unit of the general type and kind he proposed to use in the defendant's warehouse. The defendant, his son-in-law, and Mr. Teigen then went to Mr. Teigen's office where the matter of the defendant signing a contract of purchase for the proposed installation was discussed. The defendant stated to Mr. Teigen that he did not wish to sign a purchase order unless he could be assured that the proposed installation would work. Mr. Teigen assured him that it "would do the job." Thereupon the defendant signed the purchase order. The purchase order is dated April 5th, 1948, and provided for the purchase by the defendant from the United States Air Conditioning Corporation of the following: "One (1) Only Type FFX Model 50-27 Style "A", Rotor Absorbent Dehumidifier, Refrig-o-Miser, complete with installation plans and specifications and supervision of installation at Clear Lake, Iowa." Under the provisions of the purchase order the defendant was to pay the sum of $8,300, of which $2,800 was to be paid upon the execution of the purchase order and the balance of $5,500 on May 1st, 1949, and upon the delivery of the unit the defendant was to execute a conditional sale contract. Upon the signing of the purchase order the defendant paid the United States Air Conditioning Corporation the sum of $2,800, which was accepted by it and which at all times since has been retained by it.

The unit described in the purchase order was a standard type that the United States Air Conditioning Corporation had manufactured for several years as a part of its line of air conditioning equipment. It had been designed by Mr. Teigen. At the time

of the signing of the purchase order the defendant understood that the United States Air Conditioning Corporation did not have that particular type of unit on hand but that it would be turned out in the course of the vendor's manufacturing operations. The United States Air Conditioning Corporation later provided detailed plans for the installation. Those plans required the construction of sheet metal conduits in the warehouse and the construction of an addition to the warehouse. The United States Air Conditioning Corporation furnished the specifications for the sheet metal work and for the addition. A local sheet metal contractor did the sheet metal work at a cost of $3,675, which was paid by the defendant. The addition was constructed in accord with the directions of Mr. Teigen and at a cost of around $3,000, which was paid by the defendant. The equipment was delivered at the defendant's warehouse at Clear Lake on August 10th, 1948. Mr. Teigen was there when it arrived. It was put into place under the directions of Mr. Teigen and he supervised the installation and setting up of the system. On the afternoon of September 4th or 5th, 1948, Mr. Teigen caused the unit to be turned on. At the time the defendant's onion harvest was under way. The pallets containing the onions were spaced and piled in accordance with Mr. Teigen's instructions. After the unit had been operating for a while a motor burned out and it was turned off for a few days. After the motor had been repaired Mr. Teigen turned the unit on again and supervised its operation for two or three days.

In 1948 conditions were such that the defendant's onions were in good, sound condition at the time of harvest. Weather conditions during the harvesting season were favorable and the crop was in good condition for storage. The defendant inspected the onions daily to see how they were keeping. After the air conditioning equipment had been in operation for a short time the defendant noticed that the onions were getting progressively "out of condition." He contacted Mr. Teigen and informed him of the situation. Mr. Teigen came promptly and stayed for three or four days supervising the operation of the unit. He stated to the defendant that the operation of the equipment would remedy the situation as to the keeping of the onions. The defendant operated the equipment until November, 1948. The condition of the onions became progressively worse and on or about November 15th, 1948, the defendant shut down the operation of the equipment. By that time the condition of the onions in the warehouse was such that the defendant commenced salvage operations. He first sorted out those onions that were still in good condition. The remaining onions were in a generally wet and slimy condition. He was able to dry out some of those onions by covering them with canvas and circulating air underneath the canvas. For purposes of such air circulation he made use, for a limited time, of one of the fans of the unit. It developed that 14,400 bushels of the onions were past salvaging and they were hauled to the dump. The market value of these onions, if they had been in marketable condition, would have been $13,305.60. Onions harvested by the defendant in 1948 which were stored in pallets in his other warehouses where there was no air conditioning were still in good condition in November, 1948.

At the time of the delivery of the equipment on August 10th, 1948, the defendant at Clear Lake, Iowa, signed the conditional sale contract upon which the plaintiff seeks recovery. That contract, with the corporate acknowledgement as to assignment omitted, was as follows:

"CONDITIONAL SALES CONTRACT

"THIS AGREEMENT, made this 10th day of August, 1948, between United States Air Conditioning Corp. Seller, and Sam Kennedy, of Clear Lake, County of Cerro Gordo, State of Iowa, Purchaser, WITNESSETH:

"The Seller hereby sells, and the Purchaser hereby purchases, subject to the terms and conditions hereinafter set forth, the property described below or in schedule

attached hereto, all of which the Purchaser agrees to keep and maintain as personal property at Potato Warehouse, City of Clear Lake, State of Iowa, to-wit:

"1 Type FFX Model 50–33–40 A Absorbant dehumidifier Refrig-o-Miser
"1 Installations plans and specifications
"1 Supervision of installation

"TOTAL TIME PRICE OF EIGHTY THREE HUNDRED AND NO/100 Dollars ($8300.00)
"DOWN PAYMENT TWENTY EIGHT (By Allowance $------) Hundred $2800.00)
 (By Cash $------)
"AND THE BALANCE OF FIFTY FIVE HUNDRED AND NO/100 Dollars ($5500.00)

"Payable at the office of the Seller, or of the holder hereof, at holder's option on May 1, 1949, together with interest payable monthly with each installment on the unpaid balance at the rate of 0 per cent per annum. On any past due installments Purchaser agrees to pay interest from maturity at maximum legal contract rate.

"1. The Purchaser agrees to keep said property insured against loss or damage by fire, wind, theft and accident, in an insurance company or companies satisfactory to the Seller, in an amount not less than the unpaid portion of the purchase price, such insurance to be payable to the Seller as its interest may appear, and the policies therefor to be delivered to and retained by the Seller until the purchase price is paid in full. If Purchaser fails at any time to provide said insurance, the Seller may have the property insured and the cost of such insurance shall be paid for by the Purchaser.

"2. It is understood that the title to the above described property shall not pass to the Purchaser but shall remain vested in and be the property of the Seller, or its assigns, until the purchase price, interest and all other sums due hereunder have been fully paid. Each and all of the conditions and stipulations of this agreement, including the time for making said payments, shall be and are of the essence of this contract, and no agreement for any extension of time or postponement of any payment shall be valid unless in writing signed by the then owner of this contract.

"3. The Purchaser agrees to keep, use and maintain said property in a careful manner so as not to unreasonably or unnecessarily expose the same to damage, wear or depreciation, and agrees to keep the same in good order and repair and free of all taxes, liens and encumbrances whatsoever, and agrees not to remove said property from its place of business described above nor to sell, assign, or transfer its rights under this contract or transfer possession of said property or permit the same to pass from its possession.

"4. It is expressly agreed that said property shall be and remain strictly personal property and retain its character as such, no matter in what manner it may be affixed or attached to any building, structure or premises.

"5. In the event of any default by the Purchaser in the performance of any of the terms or conditions hereof, the Seller may at its option and without notice declare the unpaid portion of the purchase price, together with accrued interest thereof, if any, immediately due and payable, and thereupon the Seller may either proceed to collect from the Purchaser the balance due or Seller may retake possession of said property wherever it may be found, with or without legal process and hold the same free of all claims of the Purchaser and retain as liquidated damages all payments theretofore made.

"6. For the purpose of enforcing the Seller's rights hereunder, the Purchaser authorizes the Seller to enter upon the premises, with or without notice, and remove said property, and hereby waives any action, or right of action, arising out of such entry and re-possession, and if the matter be placed in the hands of an attorney or collector, for suit or collection, Purchaser agrees to pay the reasonable value of such services and expenses.

"7. The Purchaser admits notice of the intended assignment of this contract and agrees that if this contract be assigned Seller shall not be deemed the agent of assignee, and all payments shall be made to assignee or its agents absolutely, hereby waiving all rights now or hereafter existing in Purchaser's favor against Seller to make any defense, counterclaim or offset to any demand or action brought by assignee to recover payments due hereunder, or to enforce any rights hereunder, or to recover possession of said chattels, the Purchaser agreeing that all claims or demands on his part against Seller shall be independent of any action or claim by assignee against the Purchaser.

"8. It is understood and agreed that no verbal or written understanding or agreement of any kind exists in regard to the property or the payments therefor other than what is herein expressly dated; that all goods purchased hereunder are bought by the Purchaser in sole reliance on and subject to the manufacturer's warranty. Any provision of this contract prohibited by laws of any state shall as to said state be ineffective to the extent of such prohibition without invalidating the remaining provisions of this contract.

"The buyer acknowledges receipt of a true copy hereof. In testimony whereof I or we have hereunto set our hand and seal the day and year above written.

| "F. A. Dulin | Sam Kennedy |
|---|---|
| (Witness' Signature) | (Purchaser's Signature) |
| James R. Kennedy | By ........................ |
| (Witness' Signature) | (Seller) |
| | "By UNITED STATES |
| * * * * * * | AIR COND. CORP. |
| * * * * * * | By L. P. Hanson |
| * * * * * * | V. P. Charge of Sales" |

"ASSIGNMENT

"For value received, the undersigned hereby sell, assigns, and transfers to First Acceptance Corporation its successors or assigns, all right, title and interest in and to the within contract, the amounts payable thereunder, the property therein described, and the rights therefrom ensuing. The undersigned hereby guarantees; the full performance of said contract and prompt payment of all sums provided therein, together with all collection expenses; that the mer-chandise described in the contract was actually delivered and/or installed and accepted by the purchaser named therein; that nothing has been done or exists to limit or affect the validity of said contract. The undersigned agrees that any extension, compromise or settlement that may be granted or made by the holder hereof to or with the parties to said contract shall not in any manner release the undersigned.

"Date
October 31, 1948
 "UNITED STATES AIR CON-
 DITIONING CORP.
 (Seller)
 "By L. P. Hanson,
 Vice President in charge of sales
 George Kucera
 Ass't. Secretary"

The defendant gave no note or notes in connection with the purchase and the plaintiff's action is based upon the defendant's promise to pay the $5,500 balance of the purchase price which is contained in the conditional sale contract. There was language in the plaintiff's complaint which could be construed as a claim on its part that the contract constituted a negotiable instrument, but the plaintiff subsequently formally abandoned this claim.

The United States Air Conditioning Corporation transferred the conditional sale contract to the Northwestern National Bank of Minneapolis immediately after receiving it. Later the United States Air Conditioning Corporation and the First Acceptance Corporation made arrangements under and by which the conditional sale contract was to be taken over by the latter. On October 31st, 1948, the United States Air Conditioning Corporation assigned the conditional sale contract to the plaintiff. Under the arrangements between the United States Air Conditioning Corporation and the plaintiff and under the assignment the United States Air Conditioning Corporation guaranteed the payment of the defendant's obligation. It appears that the plaintiff was handling a large amount of the financing for the United States Air Conditioning Corporation and that under the arrangements between them 80 per cent of the amount

due on obligations assigned to it was paid to the United States Air Conditioning Corporation at the time of the assignment and that 20 per cent was withheld as a reserve in connection with obligations of the United States Air Conditioning Corporation to the plaintiff. It appears that at the time this action was brought a reserve in a considerable amount had been built up and that the plaintiff could have, if it had wished, enforced the guarantee of the United States Air Conditioning Corporation as to the unpaid $5,500 by charging that indebtedness out of such reserve and reassigning the contract to the United States Air Conditioning Corporation. It appeared, however, that the United States Air Conditioning Corporation at the time this action was brought was indebted to the plaintiff on an inventory loan in the approximate amount of $149,000 and that it did not desire to charge the amount unpaid on the defendant's contract against such reserve and reassign it to the United States Air Conditioning Corporation. The United States Air Conditioning Corporation was, and is, under obligation to reimburse the plaintiff for all collection expenses. An officer of the plaintiff testified that under its contract with the United States Air Conditioning Corporation the latter would have to reimburse the plaintiff for the expenses incurred by it in connection with this litigation. The defendant claimed at the trial that, in the light of the evidence adduced as to the situation existing between the United States Air Conditioning Corporation and the plaintiff as to the conditional sale contract at the time this action was brought, the plaintiff should not be allowed to maintain this action since the United States Air Conditioning Corporation was the real party in interest. The Court, however, ruled that the plaintiff, as assignee, was the owner of the conditional sale contract and as such could maintain this action, and that issue was not submitted to the jury.

The plaintiff in May, 1949, gave the defendant notice of the assignment of the conditional sale contract. That was the first time the defendant had knowledge that the contract had ever been assigned. For several months after the defendant had shut down the operation of the equipment he and the United States Air Conditioning Corporation carried on fruitless correspondence in regard to the claimed failure of the equipment and the damages sustained by the defendant because of such failure. The defendant refused to pay the $5,500 balance of the purchase price when it became due on May 1st, 1949. Until that date he was not in default. It was the claim of the defendant that the air conditioning equipment was, and is, worthless. It was, and is, the claim of the defendant that he sustained damages much in excess of the sum of $5,500 sought to be recovered by the plaintiff in this action, and he offered evidence indicating that such was the case. So far as this record shows the air conditioning equipment still sits idle in the defendant's warehouse.

In the present case the defendant set up the defense that the contract upon which the plaintiff seeks recovery had been procured from him by means of fraud practiced upon him by the United States Air Conditioning Corporation acting through Mr. Teigen. The defendant did not plead rescission. The defendant did not ask that a portion of the damages sustained by him be set off or recouped against the amount claimed by the plaintiff. The plaintiff contended, and contends, that because of the legal situation its motion for a directed verdict made at the end of the case should have been sustained and that its present motion for judgment notwithstanding the verdict should be granted.

The defendant claims that the transaction between the United States Air Conditioning Corporation and the plaintiff placed him in a legal dilemma and that he used the defense of fraud in the only manner left open to him. It is the contention of the defendant that rescission was legally impossible for the reason that rescission could not be made with the United States Air Conditioning Corporation because the title to the subject matter of the sale was in the plaintiff; and that rescission could not be had with the plaintiff because the sum of $2,800 paid by him under the contract had been retained by the United States Air Conditioning Corporation and the plaintiff

was under no obligation or duty to make refund of the $2,800 upon rescission. The defendant points out that the United States Air Conditioning Corporation was not subject to service of process in Iowa and, therefore, it could not be made a party to this action.

The defendant further claims that the damages sustained by him because of the fraud practiced upon him by the United States Air Conditioning Corporation are greatly in excess of the amount which the plaintiff seeks to recover herein; and that if he asserted part of his damages as an offset or by way of recoupment against the plaintiff's claim he would be splitting his cause of action and that he then would be unable to recover the balance of his damages from the United States Air Conditioning Corporation.

It is plain that the defendant in his pleadings very carefully refrained from attempting to use any part of his damages as an offset or by way of recoupment. The position of the defendant is that since rescission was impossible and since he could not use part of his claim as an offset or by way of recoupment without losing the balance of his claim all that he could do was to ask that the contract be not enforced against him because of fraud in its procurement.

■ The contentions of the parties referred to require consideration of some aspects of the law relating to conditional sales. A conditional sale is a sale in which the vendee receives the right to, and the use of, the goods which are the subject matter of the sale, but the transfer of title to him is conditional on the performance of some condition by the vendee, usually the full payment of the purchase price. 47 Am.Jur. pp. 6, 7. Conditional sales have many features and incidents not found in ordinary sales. There has been a considerable diversity of opinion among the courts as to the applicability of the provisions of the Uniform Sales Act to conditional sales. It was deemed advisable to have a Uniform Conditional Sales Act dealing specifically with conditional sales. That Act has been adopted in a number of states. Iowa has adopted the Uniform Sales Act, Chapter 554, Code of Iowa 1950, I.C.A., but it has not adopted the Uniform Conditional Sales Act.

■ While conditional sale contracts are in the nature of security transactions, they differ from other security transactions. In the case of Smith v. Russell, 1937, 223 Iowa 123, 272 N.W. 121, 124, the Iowa Supreme Court states: "We have recognized in this state conditional sale contracts as a species of contracts entirely separate and apart from chattel mortgage contracts or other forms of security." The distinct and peculiar features of conditional sale contracts have given rise to uncertainty as to the rights and remedies of the parties. Some of this uncertainty has been occasioned by "confusion between rights and remedies." 47 Am.Jur. p. 160. It is clear that the United States Air Conditioning Corporation under, and by virtue of, the conditional sale contract referred to retained legal title to the air conditioning equipment. It is well settled that the assignment of a conditional sale contract transfers to the assignee the title to the property covered by the contract. 47 Am. Jur. p. 140. The assignee in such a case becomes vested not only with all of the vendor's title and interest in the property but also becomes vested with all of the vendor's rights. State Savings Bank v. Universal Credit Co., 1943, 233 Iowa 247, 8 N.W.2d 719, 723. An assignment divests the assignor of all right, title and interest in, and control over the subject matter, and any act of dominion by the assignor over the subject matter of the assignment after assignment is a conversion for which the assignor may be held liable in tort. 6 C.J.S., Assignments, § 101, p. 1158. See, also, United States v. Fleming, D.C.Iowa 1946, 69 F.Supp. 252, 261. Until and unless a conditional sale contract is reassigned to the assignor he is not entitled to the possession of the subject matter of the conditional sale. 47 Am.Jur. p. 138. An assignee of a conditional sale contract which is rescinded by the conditional vendee is not liable for the payments made thereunder by the conditional vendee to the conditional vendor. Kavli v. Leifman, 1940, 207 Minn. 549, 292 N.W. 210, 213.

An assignee of a conditional sale contract is not personally liable to the conditional vendee for the damages sustained by such vendee because of breach of warranty or false representations by the conditional vendor. Securities Inv. Corporation v. Krejci, 1935, 128 Neb. 763, 260 N.W. 396, 6 C.J.S., Assignments, § 105, p. 1161. A counterclaim or offset against an assignee based on a claim against the assignor can only be used defensively; it cannot be used affirmatively. 47 Am.Jur. p. 756. In such cases the claim against the assignor can only be allowed to the extent it offsets the assignee's claim. Boyd v. Gore, 1910, 143 Wis. 531, 128 N.W. 68, 21 Ann.Cas. 1263; Webb v. Michener, 1884, 32 Minn. 48, 19 N.W. 82. A cause of action for deceit may not be split. 1 Am.Jur. p. 493. Clark v. Wheatley, 6 Cir., 1922, 281 F. 55, 58. The rule against splitting causes of action does not permit part of a claim to be asserted in one action and part in another. 1 Am.Jur. p. 483; Geiser Threshing Machine Co. v. Farmer, 1881, 27 Minn. 428, 8 N.W. 141. A party can use his claim by way of recoupment only by sustaining a loss to the extent that his claim exceeds that of the adverse party. 47 Am. Jur. p. 788. A party who secures affirmative relief as to a portion of his claim in one action cannot thereafter use it as the basis of a subsequent action. 1 Am.Jur. p. 483. The use of a portion of a claim as a defense bars its use as the basis of an independent action. Brown v. First Nat. Bank, 8 Cir., 1904, 132 F. 450, certiorari denied, 1904, 196 U.S. 641, 25 S.Ct. 796, 49 L.Ed. 631. See, also, Woodbury v. Porter, 8 Cir., 1946, 158 F.2d 194. A party who has but a single cause of action cannot have his damages partially assessed in successive actions. Derderian v. Union Market Nat. Bank, Mass.1950, 95 N.E.2d 552, 553. An entire and indivisible right of offset or counterclaim may not be split and asserted part in one action and part in another. 50 C.J.S., Judgments, § 685, p. 139. However, where the use of a matter defensively does not involve an assertion of it as a claim against the plaintiff, but merely as a ground for denying the plaintiff the relief sought, such use does not bar the subsequent use of the same fact or facts as the basis of an action. 1 Am.Jur. p. 483. The case of Linderman Mach. Co. v. Hillenbrand Co., 1920, 75 Ind.App. 111, 127 N.E. 813, where a conditional sale contract was involved, is illustrative of such use.

The essential elements of actionable fraud are the same whether used as the basis of an action for damages or as a defense. Johnson Service Co. v. Kruse, 1913, 121 Minn. 28, 140 N.W. 118. It has been held that where fraud is merely set up as a defense and no other relief is asked damage to the defrauded party need not be proved. 37 C.J.S., Fraud, § 103, p. 409; California Credit & Collection Corporation v. Goodin, 1926, 76, Cal.App. 785, 246 P. 121. However, it is the Iowa rule that proof of damage is essential to the legal recognition of fraud. Otte v. James, 1925, 200 Iowa 1353, 206 N.W. 613. In that connection the jury in the present case was instructed as follows:

"It is a necessary element of fraud that the party to whom the representations were made sustained substantial damage because of action taken in reliance thereon.

"In the present case it is not necessary for you to determine the exact amount and extent of the damages sustained by Sam Kennedy. It will only be necessary for you to determine whether or not Sam Kennedy sustained substantial damage because of his reliance upon the claimed representations, and it will not be necessary for you to determine the extent and amount of the same. No damages can be awarded to Sam Kennedy as against the plaintiff herein. The recovery for the damages he may have sustained is a matter between Sam Kennedy and the United States Air Conditioning Corporation. * * *"

There was evidence from which the jury could find that the defendant had suffered substantial damage because of his reliance upon the statements referred to. In the present case the defendant did not assert any portion of his claim for damages

against the plaintiff or ask any affirmative relief based thereon. His defense was that his promise to pay upon which the plaintiff sought recovery was induced and procured by fraud and therefore the plaintiff should not be allowed to recover thereon.

It is well settled that the owner of a conditional sale contract does not waive his title to the property or the right to reclaim it by bringing an action for the purchase price. 47 Am.Jur. p. 157; Murray v. McDonald, 1927, 203 Iowa 418, 212 N.W. 711, 56 A.L.R. 233. Therefore the plaintiff by bringing this action for the balance of the purchase price did not waive its title to the air conditioning equipment in question or the right to reclaim it. The fact that a conditional vendee is held not to be liable for the purchase price of the property in a suit by an assignee of the conditional vendor does not divest such assignee of the legal title to the property. Heyl v. Beadel, 1940, 229 Iowa 210, 294 N.W. 335; 130 A.L.R. 994. Therefore, in the present case the fact that the defendant by verdict of the jury was held not to be personally liable to the plaintiff for the purchase price does not deprive the plaintiff of its legal title to the air conditioning equipment. It is and at all times since October 31st, 1948, has been the owner of legal title to that equipment. In certain situations where the owner of an obligation is unable because of an infirmity in it to enforce it he may nevertheless on an ex contractu basis recover the value of the consideration which passed to the obligor. In the present case the title to the air conditioning equipment had never passed to the defendant so that he could not be regarded as having received that as consideration. The defendant did by virtue of the conditional sale contract in question receive the use of the equipment. It was, and is, the claim of the defendant that such use was a damage to him and not a benefit. However, the plaintiff in this action sought recovery only upon the promise of the defendant contained in the conditional sale contract and not upon any other theory. So far as appears of record the defendant has not at any time denied the legal title of the plaintiff and its assignor to the equipment or denied their right to reclaim the property.

The plaintiff contends that the defendant cannot defeat its claim for a portion of the purchase price without showing rescission or offer to rescind. The plaintiff in this connection relies upon the rule which is to the effect that in general it is unjust for a party to repudiate his obligation under a contract and still retain the benefits he received thereunder, and that by rescission such a result may be prevented. The purpose and object of rescission is to place the parties in the status quo and to that end each of the parties is to restore, and to have restored, what each received under the contract. Lutz v. Cunningham, 1949, 240 Iowa 1037, 38 N.W.2d 638, 645. Rescission is merely one form of remedial relief. Reinertson v. Struthers, 1926, 201 Iowa 1186, 207 N. W. 247, 248. The rule as to rescission is not technical but equitable, and the practical rights of a party are not to be prejudiced thereby. 6 Ruling Case Law, pp. 936-940; Vance v. Chicago Portrait Co., 7 Cir., 1927, 19 F.2d 981, 986; Sjulin v. Clifton Furniture Co., Iowa 1950, 41 N. W.2d 721. In the case of Sjulin v. Clifton Furniture Co., supra, the Iowa Supreme Court 41 N.W.2d at page 727 N.W. states: "The rule requiring restoration of what was received is not to be applied strictly but in accordance with equitable principles * * *." It seems clear that where the situation is such that mutual restoration cannot be made the defrauded party is legally excused from rescinding or attempting to rescind.

In the present case the defendant could not, after discovering the fraud, make rescission with the United States Air Conditioning Corporation because it had parted with title to the equipment, and an exercise of dominion over the equipment by the United States Air Conditioning Corporation would have been wrongful. The $2,800 payment made by the defendant on the purchase price was retained by the United States Air Condition-

874

ing Corporation and was never received by the plaintiff. Therefore, the plaintiff as assignee of the conditional sale contract was under no obligation to make restitution of that payment to the defendant and the plaintiff so asserts and claims.

 It is the view of the Court that under the circumstances in the present case the defendant was legally excused from attempting to rescind.

In this case jurisdiction is based upon diversity of citizenship. While the plaintiff tends to the view that the Minnesota law is applicable, yet it states in its written brief and argument that there "appears to be no noticeable difference between the law of Iowa and that of Minnesota in respect to the issues of law" involved. While the defendant tends to the view that the Iowa law is applicable, he claims that the Minnesota decisions support his position even more strongly than the Iowa decisions. The Court's instructions which, as heretofore noted, were not excepted to by either party were based upon the Iowa law and hence under the rule heretofore noted constitute the law of the case.

■ One of the grounds upon which plaintiff bases its motion for judgment notwithstanding the verdict is that the court erred in not sustaining plaintiff's motion for directed verdict based upon the ground that the representations claimed to have been made were merely the equivalent of an implied warranty of fitness. In Carter v. Abbott, 1871, 33 Iowa 180, 181, the Iowa Supreme Court states: "A positive declaration of quality, possessing all the other requisites of a warranty, does not cease to be a warranty because known to be false, and, therefore, a fraud. 'Any distinct assertion or affirmation of quality made by the owner during a negotiation for the sale of a chattel, which it may be supposed was intended to cause the sale, and was operative in causing it, will be regarded either as implying or as constituting a warranty. If such affirmation were made in good faith it is still a warranty; and if made with a knowledge of its falsity, it is a warranty, and it is also a fraud.' 1 Parsons on Contracts (5th ed.)

p. 580." See, also, Oelwein Chemical Co. v. Baker, 1927, 204 Iowa 66, 214 N.W. 595; Boysen v. Petersen, 1927, 203 Iowa 1073, 211 N.W. 894; Reinertson v. Struthers, 1926, 201 Iowa 1186, 207 N.W. 247; Hughes v. Funston & Smith, 1867, 23 Iowa 257; 46 Am.Jur., p. 859.

Another ground upon which the plaintiff bases its motion for judgment notwithstanding the verdict is that the court erred in refusing to hold as a matter of law that there was no evidence of scienter on the part of the person making the oral representation or warranty. This issue was submitted to the jury and they were instructed as follows:

"One of the necessary elements of fraud is that one making a statement either have actual knowledge that the statement made by him was false or that without personal knowledge as to whether the statement was true or false he made it in such an absolute and unqualified manner as to justify the conclusion that he had personal knowledge of the truth of the statement.

"You will determine whether the claimed representations, if made, were made by F. A. Teigen with actual knowledge of their falsity or, if not having personal knowledge of their truth or falsity, he made them in such an absolute and unqualified manner as to justify the conclusion on the part of Sam Kennedy that he (F. A. Teigen) had personal knowledge as to their truth."

 In order to establish fraud it has long been necessary to show scienter. Derry v. Peek, 1889, L.R. 14 App.Cas. 337; Holmes v. Clark, 1860, 10 Iowa 423; Carey v. Drake, Iowa 1950, 44 N.W.2d 357, 361. Under the decisions of the Iowa Supreme Court " * * * scienter may be proved by showing (1) actual knowledge of the falsity of the representation; (2) that the statement was made as of the knowledge of the party, or in such absolute, unqualified, and positive terms as to imply his personal knowledge of the fact when in truth he had no knowledge whether the statement was true or false; or (3) that the party's special situation or means of knowledge were such as to make it his duty to know

as to the truth or falsity of the representation." Davis v. Central Land Co., 1913, 162 Iowa 269, 143 N.W. 1073, 1075, 49 L.R.A.,N.S., 1219; Smith v. Packard & Co., 1911, 152 Iowa 1, 130 N.W. 1076; Riley v. Bell, 1903, 120 Iowa 618, 95 N.W. 170. It is the view of the Court that the evidence in this case was such that the Court was justified in submitting to the jury the question of whether F. A. Teigen either actually knew that the statements were false or made them in such "absolute, unqualified and positive terms as to imply his personal knowledge" as to their truth.

In this connection it should be noted that it has been held by the Minnesota Supreme Court that material misrepresentations which are relied upon are actionable even though innocently made. Moulton v. Norton, 1931, 184 Minn. 343, 238 N.W. 686.

It was, and is, the contention of the plaintiff that the statements made by Mr. Teigen in connection with the sale of the air conditioning equipment were not statements of fact but expressions of opinion only and, therefore, not actionable.

Representations very similar to those made in the case at bar were held actionable in Minnesota in a factual situation very similar to the factual situation in the case at bar. In the case of Schmitt v. Ornes Esswein & Co., 1921, 149 Minn. 370, 183 N.W. 840, a representation that an ice machine would keep the buyer's ice box at a temperature low enough to prevent meat from spoiling was held to be a representation of an existing fact and not an expression of opinion. In the case of Jones v. Brandt, 1921, 173 Wis. 539, 181 N.W. 813, one of the representations allegedly made was that a dredge was of a kind and construction such as to properly do the work desired. On appeal it was held that this representation, along with others, was properly submitted to the jury. In the case of Dowagaic Mfg. Co. v. Gibson, 1887, 73 Iowa 525, 35 N.W. 603, it was held that representations that the machinery sold to the defendant was suited for the purpose intended and well worth the price were properly submitted to the

jury when set up as a defense and counterclaim in an action on notes given for the purchase price. See, also, Watson v. Brown, 1901, 113 Iowa 308, 85 N.W. 28. In Keithley v. Mutual Life Ins. Co. of New York, 1916, 271 Ill. 584, 111 N.E. 503, 504, it is stated: "The statement of a thing in the future, to be a fraudulent misrepresentation, must amount to the statement of a fact. The statement that * * * a machine will do certain work * * * or the like, although future in form, refers to the suitability or capacity of the article or machine for the proposed purpose * * * and amounts to a statement of an existing fact." See, also, Burroughs Adding Machine Co. v. Scandinavian-American Bank, D.C.Wash.1917, 239 F. 179.

██ In the present case the question as to whether the representations in question were statements of fact or expressions of opinion was submitted to the jury. Whether a representation is a statement of fact or an opinion is usually a question to be determined by the jury in the light of all the conditions and circumstances. Rowe Mfg. Co. v. Curtis-Straub Co., 1937, 223 Iowa 858, 273 N.W. 895; Commercial Savings Bank v. Kietges, 1928, 206 Iowa 90, 219 N.W. 44; Boysen v. Petersen, 1927, 203 Iowa 1073, 211 N.W. 894; Creamer v. Stevens, 1921, 192 Iowa 920, 185 N.W. 581; Hogan v. McCombs Bros., 1921, 190 Iowa 650, 180 N.W. 770; Hetland v. Bilstad, 1908, 140 Iowa 411, 118 N.W. 422.

In the case of Hall v. Crow, 1948, 240 Iowa 81, 34 N.W.2d 195, the statements alledgedly constituting fraudulent representations were to the effect that certain hybrid seed corn would yield the equivalent of any other hybrid corn. The party to whom the statements were allegedly made brought an action at law claiming that he was defrauded thereby. The jury returned a verdict for the plaintiff. The defendant on appeal contended that the statements did not constitute statements of fact but constituted expressions of opinion only. The Iowa Supreme Court affirmed the trial court. In its opinion the Court stated at page 199 of 34 N.W.2d, that the trial

court held that the statements were capable of being taken as statements of fact and that: "The trial court further held they were neither representations of fact per se nor expressions of opinion per se but that they might 'be either, depending upon the circumstances, and the question of which character the statement has' was for the jury. We agree with this holding." In the present case the jury was instructed as follows on the question of whether the representations were statements of fact or expressions of opinion:

"One of the necessary elements of fraud is that the representations made must be those of fact as distinguished from expressions of opinion. Whether a certain representation is an expression of opinion or a statement of fact depends upon the facts and conditions in each case.

"You will determine whether the claimed representations, if made, did under the conditions and circumstances in ·this case constitute a statement of fact on the part of F. A. Teigen or an expression of opinion on his part. In determining that question you may and should consider the subject matter of the transaction in its entirety; the knowledge, lack of knowledge, means of knowledge and comparative knowledge and experience of Sam Kennedy and F. A. Teigen in connection therewith; the nature and character of their relations; the manner and the conditions under which the claimed representations were made; and all of the facts and circumstances, if as shown by the evidence, tending to indicate whether F. A. Teigen by such representations was making an affirmation of fact or was merely expressing an opinion."

▆▆▆ Under the Iowa law the superior knowledge of the representor is one of the factors that must be taken into consideration in determining whether a representation is a statement of fact or opinion. The Iowa court has stated: "* * * if the representor has the greater knowledge or means of knowledge, if the parties are not dealing with facts before them equally open and observable, if the representation, though in form in the nature of an opinion, is not sincere, but made with the purpose to deceive, the

representor may be found to have represented by implication the existence of the facts necessary to sustain the representation which he puts in the form of an opinion." Commercial Savings Bank v. Kietges, 1928, 206 Iowa 90, 219 N.W. 44, 47.

In Vulcan Metals Co., Inc., v. Simmons Mfg. Co., 2 Cir., 1918, 248 F. 853, 856, the court states: "An opinion is a fact, and it may be a very relevant fact * * When the parties are so situated that the buyer may reasonably rely upon the expression of the seller's opinion, it is no excuse to give a false one." 23 Am.Jur., Fraud & Deceit, p. 789, states: "* * * the rule is that if the person expressing the opinion possesses superior knowledge, and it is a justifiable conclusion that he intended untruly to imply that he knew facts such as would justify his opinion, his opinion may be regarded in law as an assertion of fact and not honestly entertained."

▆▆▆ The defendant, Sam Kennedy, testified in substance that the statements by F. A. Teigen which induced him (Kennedy) to enter into the conditional sale contract were not made in the form of expressions of opinion, but were made as unqualified statements of fact. Though the form of a representation and the manner in which it is made are not controlling, they are factors that should be considered in determining whether the representation is a statement of fact or an expression of opinion. Barr v. Butler, 1923, 197 Iowa 575, 195 N.W. 980. The claim of the plaintiff as to this ground is in effect that this Court should have held as a matter of law that the statements made by Mr. Teigen were expressions of opinion. It is the view of the Court that the question as to whether the statements constituted statements of fact or expressions of opinion was properly submitted to the jury.

It is the contention of the plaintiff that the defendant may not assert the defense of fraud. In this connection the plaintiff claims as follows: (1) that the defendant by his conduct waived the fraud practiced upon him; (2) that under the provisions of the conditional sale contract he waived

his right to assert the defense of fraud; (3) that the defendant is estopped as against it to assert the defense of fraud.

It was, and is, the claim of the plaintiff that the defendant, by his conduct, waived the fraud. The plaintiff's contention on this phase of the case is that the defendant, by his conduct, affirmed the contract and hence condoned the fraud practiced upon him in connection therewith. Under certain conditions and circumstances a defrauded vendee is held to have waived his right to rescind on the ground of fraud. However, the waiver by a defrauded vendee of his right to rescission does not waive his right to other forms of redress for the fraud practiced upon him. Bean v. Bickley, 1919, 187 Iowa 689, 174 N.W. 675, 683. Whether a defrauded vendee asserts fraud purely as a defense or asserts it affirmatively the gravamen is fraud. Bean v. Bickley, 1919, 187 Iowa 689, 174 N.W. 675, 682.

It is the claim of the plaintiff that the defendant used the unit in question after discovery of the fraud and hence waived the fraud. In order for the conduct of a defrauded party to constitute a waiver of the fraud practiced upon him, it must be such as to indicate an intention to condone the fraud and abandon his rights of redress therefor. 24 Am.Jur. p. 34. An intention on the part of a defrauded party to waive the fraud practiced upon him must be clearly manifested. 37 C.J.S., Fraud, § 69, p. 363. The continued use by a defrauded vendee of property sold to him by means of fraudulent representations is not a waiver of the fraud practiced upon him, whatever waiver it might be of the right to rescind the contract. Gilchrist v. Manning, 1884, 54 Mich. 210, 19 N.W. 959. See, also, Reinertson v. Struthers, 1926, 201 Iowa 1186, 207 N.W. 247 and Bean v. Bickley, supra.

The defendant, following the malfunctioning of the equipment, at all times complained vigorously, if not acrimoniously, to the United States Air Conditioning Corporation as to the wrong that had been done to him. When notified by the plaintiff of the assignment of the conditional sale contract and when demand was made by the plaintiff for payment of the $5,500 the defendant made similar complaint and refused to pay the $5,500. Such conduct on the part of the defendant could hardly be considered as establishing as a matter of law that the defendant condoned the fraud and abandoned all rights of redress therefor.

The principal contention of the plaintiff in regard to its claim that the defendant may not assert the defense of fraud in this action is that under, and by virtue of, a provision in the conditional sale contract the defendant waived his right to assert the defense of fraud against the plaintiff or is estopped to assert it. Paragraph 7 of the conditional sale contract, heretofore noted, provides as follows: "7. The Purchaser admits notice of the intended assignment of this contract and agrees that if this contract be assigned Seller shall not be deemed the agent of assignee, and all payments shall be made to assignee or its agents absolutely, hereby waiving all rights now or hereafter existing in Purchaser's favor against Seller to make any defense, counterclaim or offset to any demand or action brought by assignee to recover payments due hereunder, or to enforce any rights hereunder, or to recover possession of said chattels, the Purchaser agreeing that all claims or demands on his part against Seller shall be independent of any action or claim by assignee against the Purchaser."

Rule 7 of the Iowa Rules of Civil Procedure, 58 I.C.A., provides. "The assignment of a thing in action, except transfer of a negotiable instrument for value in good faith before maturity, shall be without prejudice to any defense, counterclaim or cause of action matured or not, if matured when pleaded, existing against the assignor in favor of the party pleading it." Section 539.1 of Code of Iowa, 1950, I.C.A., relating to the assignment on non-negotiable instruments, provides that " * * * the assignee shall have a right of action thereon in his own name, subject to any defense or counterclaim which the maker or debtor had against any assignor thereof before notice of such assignment." Under the common law rule the assignee in a situation such as this would have had to maintain

the action in the name of the assignor. 6 C.J.S., Assignments, § 122, p. 1169. Except for the Rule and Statute just noted, the plaintiff would have had to have brought this action in the name of the United States Air Conditioning Corporation. In some cases the courts have given consideration to the question of whether provisions in a contract purporting to waive the benefit of similar statutes are violative of public policy. However, under the circumstances in this case, it is not necessary, for the reason hereafter noted, to pass upon that particular question in connection with the present motion.

 It appears that the financing of conditional sale contracts by the sale and assignment of them is common and general practice. It further appears that in such financing it is desirable from the viewpoint of the assignees that such contracts in their hands be free from defenses and claims by the conditional vendee against the conditional vendor. It has been attempted in some instances to achieve that objective by means of provisions in conditional sale contracts whereby the conditional vendee purports to waive as against the assignee any defense or claim he may have against the conditional vendor. Such attempts have only been partially successful. In the case of San Francisco Securities Corp. v. Phoenix Motor Co., 1923, 25 Ariz. 531, 220 P. 229, it was held that a provision in a conditional sale contract similar to the one in question would not prevent the conditional vendee from setting up as against the assignee of the contract the defense that the contract had been induced by fraudulent representations on the part of the conditional vendor. In the case of Motor Contract Co. v. Van Der Volgen, 1931, 162 Wash. 449, 298 P. 705, 79 A.L.R. 29, it was held that a similar provision would not prevent the conditional vendee from setting up the defense of usury against the assignee of the contract. It has been held that similar provisions constitute a valid waiver of the defense of breach of warranty. Anglo-American Trust Co. v. Hall, 1922, 61 Utah 223, 211 P. 991; United States ex rel. and for Benefit of Administrator of Federal Housing Administration v. Troy Parison,

Inc., 9 Cir., 1940, 115 F.2d 224; Elzey v. Ajax Heating Co., 1932, 158 A. 851, 10 N.J.Misc. 281. The matter of the waiver of the defense of breach of warranty is not involved in the motion now under consideration. In the present case the jury, by its verdict, found that the execution of the conditional sale contract in question which embodied the waiver clause was obtained by fraud. Where a waiver of fraud clause is embodied in a fraudulently obtained contract, the fraud which vitiates the contract also vitiates the waiver clause. President and Directors of Manhattan Co. v. Monogram Associates, Inc., 1949, 276 App. Div. 766, 92 N.Y.S.2d 579. Therefore, the waiver clause in the present case was ineffective as to the defendant's defense of fraud.

Since the waiver clause was procured by fraud the question is not reached in connection with the present motion as to whether a waiver clause not procured by fraud purporting to waive the benefit of Rule 7 of the Iowa Rules of Civil Procedure and Section 539.1 of the Code of Iowa 1950 would be violative of public policy.

 It is the claim of the plaintiff that even though the so-called waiver clause was not effective as a waiver yet it was effective as an estoppel and that the defendant was estopped to set up the defense of fraud as against it. Where fraud or conduct in the nature of fraud is involved a provision in the conditional sale contract purporting to waive the same as against an assignee thereof is not sufficient in itself to work an estoppel against the vendee. American National Bank v. A. G. Sommerville, Inc., 1923, 191 Cal. 364, 216 P. 376. In that case the California Supreme Court stated that in order to work an estoppel against the vendee it must appear that there was other conduct on the part of the vendee in reliance upon which the assignee took action to its prejudice. In the present case there is no evidence that the plaintiff relied upon any conduct on the part of the defendant. It does not appear, except possibly inferentially, that the plaintiff in purchasing the conditional sale contract in question did rely upon the waiver clause.

It is the view of the Court that the defendant was not estopped to assert the defense of fraud as against the plaintiff.

In the present case the defendant plead that at the time of and during the negotiations for the purchase Mr. Teigen represented to him that the United States Air Conditioning Corporation carried its own "paper" and that the conditional sale contract in question would not be sold or assigned. The plaintiff objected to the evidence offered by the defendant in support of that allegation, and its objection was sustained.

The plaintiff in its motion and in its brief and argument in support thereof claims that certain facts were or were not established by the evidence. The Court, in its summarizing or proposition instruction, instructed the jury as follows:

"In order to establish the defense of fraud, the defendant, Sam Kennedy, must establish by the greater weight or preponderance of the evidence the following propositions:

"1. That F. A. Teigen, acting for and in behalf of the United States Air Conditioning Corporation, made the claimed representations to Sam Kennedy.

"2. That such representations were made as statements of fact and not as expressions of opinion.

"3. That such representations were material.

"4. That such representations were false.

"5. That F. A. Teigen either actually knew that the representations were false or, without having personal knowledge of their truth and falsity, he made them in such an absolute and unqualified manner as to justify the conclusion on the part of Sam Kennedy that he (F. A. Teigen) had personal knowledge as to their truth.

"6. That the representations were made by F. A. Teigen to Sam Kennedy with the intent that he (Sam Kennedy) should act in reliance thereon.

"7. That Sam Kennedy, acting in reliance thereon, did enter into the contract arrangements for the purchase of the equipment and sign the conditional sale contract in question.

"8. That Sam Kennedy sustained substantial damage as a result of his acting in reliance upon the said representations.

"If the defendant, Sam Kennedy, has established each and all of said propositions numbered 1 to 8 by the greater weight or preponderance of the evidence, he has established the defense of fraud and your verdict should be for him. If you fail to find that the defendant, Sam Kennedy, has so established each and all of said propositions numbered 1 to 8, your verdict should be for the plaintiff. If your verdict is for the plaintiff, its recovery will be in the amount claimed by it."

It is the view of the Court that those factual matters referred to by the plaintiff were matters within the province of the jury in making its determination of the issues of fact just referred to.

It is the holding of the Court that the motion of the plaintiff for judgment notwithstanding the verdict or in the alternative for a new trial be overruled.